KATHERINE C. K. HAGAN, Appellant, *v.* LOUIS V. SONE et al. Respondents.

WILL — QUESTIONS OF FACT ARISING IN ACTION TO DETERMINE VALIDITY OF, MUST BE DETERMINED BY THE JURY. Questions of fact arising in an action to determine the validity of a will must be determined as in other actions, not by the court, but by the jury, and, when the evidence given is of such a character that different inferences may fairly and reasonably be drawn from it, the direction of a verdict constitutes reversible error.

*Hagan* v. *Sone,* 68 App. Div. 60, reversed.

(Argued March 25, 1903; decided April 7, 1903.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered February 20, 1902, affirming a judgment in favor of defendants entered upon a verdict directed by the court.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Albert Stickney* and *Everett V. Abbot* for appellant. There was sufficient evidence in support of the allegations of the complaint to require its submission to the jury. (*Colt* v. *S. A. R. R. Co.,* 49 N. Y. 671; *Bagley* v. *Bowe,* 105 N. Y 171; *Fealey* v. *Bull,* 163 N. Y. 397; *McDonald* v. *M. S. Ry. Co.,* 167 N. Y. 66; *Place* v. *N. Y. C. & H. R. R. R. Co.,* 167 N. Y. 345; *Dobie* v. *Armstrong,* 160 N. Y. 586.) Upon appeal from a decision of the court below depriving a

litigant of the right to go to the jury, all disputed facts and all disputed inferences of fact are to be be treated as established in favor of the appellant. (*Place* v. *N. Y. C. & H. R. R. R. Co.*, 167 N. Y. 345; *McDonald* v. *M. S. Ry. Co.*, 167 N. Y. 66; *Ladd* v. *Æ. Ins. Co.*, 147 N. Y. 478; *Higgins* v. *Eggleston*, 155 N. Y. 466; *Ten Eyck* v. *Whitbeck*, 156 N. Y. 341; *Bank of Monongahela Valley* v. *Weston*, 159 N. Y. 201; *Pratt* v. *D. H. M. F. Ins. Co.*, 130 N. Y. 212; *Fealey* v. *Bull*, 163 N. Y. 397; *Colt* v. *S. A. R. R. Co.*, 163 N. Y. 400.)

*Allan McCulloh* and *Daniel Whitford* for respondents. It was the duty of the trial court to direct a verdict for the defendants on the ground that plaintiff had presented no evidence to sustain her case. (*Linkauf* v. *Lombard*, 137 N. Y. 417; *Dobie* v. *Armstrong*, 160 N. Y. 594; *McDonald* v. *M. S. Ry. Co.*, 167 N. Y. 69; *Fealey* v. *Bull*, 163 N. Y. 402; *Fiddler* v. *N. Y. C. & H. R. R. R. Co.*, 64 App. Div. 106.)

O'BRIEN, J. This was an action to determine the validity of a written instrument produced as the last will of Anna Sutherland, who died on the 16th day of September, 1897. It was admitted to probate by the surrogate after a contest. The plaintiff is the daughter and only child of the deceased, and this action was brought by her under the provisions of section 2653a of the Code of Civil Procedure. The will provides for the payment of the debts of the testatrix, a legacy of $4,000 to the plaintiff and legacies to eight other parties not related to her in blood, amounting in the aggregate to $35,000, which included $6,000 to her lawyer, who drew the will or procured it to be drawn, $5,000 to her maid and $1,000 to her cook, and the balance to other persons, some or all of whom lived in England. The defendants are the executors of the will and the other legatees who take under it. The issues of fact presented by the pleadings were (1) the testamentary capacity of the deceased as affected by the excessive use of alcoholic liquors for a considerable period prior to the making of the will and

of her death; (2) the undue influence alleged to have been practiced upon her at and prior to the execution of the will and until her death by persons under whose control it is claimed she was, and who, it is said, were interested in the disposition of her property, including one or both of the executors.

At the trial the defendants' counsel opened the case, introduced the will in evidence with the decree of the surrogate admitting it to probate and rested as he might, since the burden of showing that the instrument was for some or all of the reasons alleged invalid was upon the plaintiff. The plaintiff gave much evidence in support of her contention, both direct and circumstantial, and at the close of this testimony the learned trial court, upon the motion of the defendants' counsel, directed a verdict for the defendants, to which direction the plaintiff's counsel excepted. This exception raises the only question presented by this appeal. The defendants gave no evidence other than the will and the decree of the surrogate, and the only question before this court is whether at the close of the plaintiff's case there was any evidence for the jury upon the issues of fact embraced in the pleadings. If there was no evidence, or if there was merely a scintilla, then the ruling of the learned trial judge was correct and should be sustained, but, if on the contrary, there was some proof in support of the allegations of the complaint, or which tended in that direction, then the case should have been decided by the jury as one of fact and not by the court as one involving only the question of law. The evidence necessary to support the allegations of the complaint to the effect that the deceased was incompetent to make a will, or was unduly influenced, may consist of direct evidence by persons who knew and observed the deceased in her daily life and who could speak as to all of her moods and habits and describe her relations to the outside world. The testimony of experts with respect to her mental condition in the form of opinions based upon stated or established facts and generally as to the effect upon the body and the mind of the excessive use of alcoholic

liquors for a long period before the execution of the will and her death, was admissible for the information of the jury. So, also, circumstantial evidence, consisting of acts or transactions between herself and others concerning the distribution of her property, from which the conclusion may be fairly drawn that the will was not her own voluntary act, but the act of others who exercised an undue influence over her, was admissible. The fact that the testatrix consulted her friends and her counsel, or acted upon their advice, does not tend to impeach her will. The instrument is to be regarded as the product of her own mind if she executed it with knowledge of its contents and the general scope of its provisions upon the disposition of her property. It must be regarded as the product of some other mind if she was incapable of understanding the situation of her property or the general effect of the instrument with respect to it. If she was not a free agent capable of acting with a reasonable degree of intelligence in regard to the matters embraced in the writing, but an instrument under the influence and control of others, without sufficient capacity to understand or appreciate the nature or character of her act, then her signature to the paper does not make it her valid testamentary disposition. It would not then be her will, but the will of some one else speaking in her name.

The case of *Dobie* v. *Armstrong* (160 N. Y. 584) is, it is said, a conclusive authority in support of the judgment in this case. It is, undoubtedly, a very strong authority in support of a direction in such cases, and while it resembles this case in some of its features, it differs widely from it in others. There the testator was a successful and experienced man of business. He was, moreover, a trained lawyer, familiar with the nature, character and legal effect of testamentary instruments. He was subject to gusts of passion and sometimes indulged in violent hatreds and animosities. He might be described as a peculiar or eccentric man, but the court thought, after considering all the facts that appeared in the record, that they did not prove or tend to prove that he was incompetent to make

a will. He was seventy-six years old when he died, and his constitution and temperament were such that his mind would naturally be more or less affected by his advancing years. But old people must, or at least may be permitted to make wills, and the fact that they may have lost much of the mental vigor of their earlier days does not prove or tend to prove that their testamentary acts are invalid.

The case now before us is that of a woman who died at the comparatively early age of fifty-three, about six months after the execution of the will, of a complication of diseases, superinduced by the excessive use of alcoholic liquors for years prior to her death. As to this general fact there is little, if any, dispute, but standing alone it would not prove that she was incompetent to make a will. It might tend to prove that she could be influenced or controlled in her testamentary disposition by others. There is considerable expert evidence in the case tending to show that the mental faculties and the will power deteriorate and are sometimes destroyed from such a cause. She had been confined to her bed for sometime prior to her death, and the plaintiff was not able to show exactly what her mental or physical condition was on the day that she executed the will; but there was evidence in the case from which any jury might fairly infer that her passion for drink existed when she made the will and continued down to the time of her death. The deceased was married at the age of eighteen and the plaintiff is the only child of the marriage. When she was about four years old the deceased and her husband parted, the father taking the child with him. The deceased instituted legal proceedings to obtain the custody of the child, but was defeated in her efforts, and from that time she never saw plaintiff, and in fact refused to see her. In the year 1874 the deceased procured a divorce from her husband in another state on the ground of desertion. About 1885 she married again and the second husband died in 1893. In the meantime she had considerable litigation with her mother in regard to property which came from her deceased father's

estate. A few days after the death of her second husband she made a will in which she gave $10,000 to the lawyer who drew it and $25,000 to a man who had been a friend of her late husband, and who it is said fostered her drinking habits and enjoyed her liberality in furnishing liquors for their use. In April, 1896, and less than a year before the execution of the will, the deceased conveyed all her property to one of the executors who is a defendant in this action. The consideration of this transfer was his agreement to pay her a yearly annuity of $6,000 during life and a certain sum after her death arranged on a sliding scale, depending on the time of her death, which might be $25,000 or as much as $50,000. The sum which he is now bound to pay under this agreement is admitted to be $35,000, which together with about $15,000 which he paid as the yearly annuity and in gross constitutes the sole consideration for the transfer of all the property of the deceased which was valued at nearly or quite $400,000. The deceased was not at the time of her death the owner of any property except such as is represented by this agreement, and the fund of $35,000 is all there can be to distribute to the legatees under this will.

The learned counsel for the plaintiff contends that the will is nothing but a supplement to the transfer and was made in aid of it in order to enable the executors to protect in that capacity the conveyance which they or at least one of them received before the will was made. He contends that the executor to whom the transfer was made is the real beneficiary under the will, that it was made under his influence and for his purposes. It is pointed out that it contains a power of sale to the executors when the deceased left no real estate upon which such a power could operate, and, hence, that it was inserted for the purpose of enabling the executors to cure any defects in the conveyance to one of them of all the property of the deceased. The facts and circumstances in support of the plaintiff's theory of the case are so numerous and complicated that it would be useless to attempt to state them in this opinion. They have been fully discussed at the

bar and some of them appear in the learned opinion below. It is quite sufficient to say that we are impressed with the contention that the case was one for the jury and should not have been disposed of by a direction from the court. There was evidence in support of the allegations of the complaint sufficient for the consideration of the jury. The value and bearing of the evidence as well as its construction, when not clear, was for the body to which is committed the decision of all questions of fact. We express no opinion as to the merits of the case, or as to the weight or value of the evidence. We only say that in our opinion there was some evidence which should have been submitted to the jury, since it tended to support the allegations of the complaint. Wills are not to be set aside by juries except for the gravest reasons. A person has the right to dispose of his property in such way and to such persons as he thinks best. It is only in a case where there is substantial proof of mental incapacity, or of undue influence, that courts or juries may annul his testamentary act. In this case the defendants gave no proof aside from the will itself. The plaintiff's proof might not have satisfied the jury that the deceased was either incompetent to make a will or subjected to any undue influence, but there was enough of it to require us to hold that the jury was the branch of the court that the law required to pass upon it. Questions of fact arising in an action to determine the validity of a will are no different in this respect from questions of fact in any other case. When evidence is given of such a character that different inferences may fairly and reasonably be drawn from it, the fact must be determined by the jury. The good sense of the jury, when aided by proper instructions from the court, is the best and, indeed, the only protection that litigants ordinarily have in the determination of issues of fact, depending upon conflicting evidence, even when such issues arise in actions to determine the validity of the most important testamentary instruments.

The judgment must be reversed and a new trial granted, costs to abide the event.

PARKER, Ch. J., BARTLETT, HAIGHT, MARTIN and VANN, JJ., concur; GRAY, J., concurs upon the sole ground that there was evidence upon which a charge of undue influence should have been submitted to the jury.

Judgment reversed, etc.