### SCOTT et al. v. BARKER.

(Supreme Court, Appellate Division, First Department.　December 18, 1908.)

1. WILLS (§ 288*)—CONTEST—BURDEN OF PROOF.

Under Code Civ. Proc. § 2653a, giving a right of action triable by jury to determine the validity of a paper admitted to probate as a last will and testament, and providing that on the trial of such an issue, the decree admitting the will to probate shall be prima facie evidence of the due execution and validity of the will, that the parties sustaining the will shall be entitled to open and close the evidence and argument and shall offer the will in probate and rest; that the other party shall then offer his evidence, and that the party sustaining the will shall then offer his other evidence; and that rebutting testimony may be then offered as in other cases the burden of proof rests on the attacking party.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 651–664; Dec. Dig. § 288.*]

2. WILLS (§ 324*)—CONTESTS—QUESTIONS FOR JURY.

The rule that, so long as a question of fact exists, it is for the jury and not for the court, obtains in will contests.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 767–770; Dec. Dig. § 324.*]

3. WILLS (§ 225*)—CONTESTS—SETTING ASIDE.

Wills are not to be set aside by juries except for the gravest reasons.

[Ed. Note.—For other cases, see Wills, Dec. Dig. § 225.*]

4. WILLS (§ 55*)—TESTAMENTARY CAPACITY—SUFFICIENCY OF EVIDENCE.

Evidence *held* insufficient to support a finding that testator was mentally incompetent when he executed his will.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 137–161; Dec. Dig. § 55.*]

5. WILLS (§ 82*)—VALIDITY—UNNATURAL DISPOSITION.

A testator of sound and disposing mind, and not governed by undue influence, has a right to leave his property as he pleases.

[Ed. Note.—For other cases, see Wills, Cent. Dig. § 203; Dec. Dig. § 82.*]

6. WILLS (§ 401*)—CONTEST—REVIEW.

It is the duty of the appellate court, when it has determined that a verdict rendered in an action to contest a will is against the weight of the evidence, to set the verdict aside, and order a new trial.

[Ed. Note.—For other cases, see Wills, Cent. Dig. § 874; Dec. Dig. § 401.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Appeal from Trial Term, New York County.

Action by Lisbeth Bell Scott and another against Edith M. Barker, individually and as executrix under the last will and testament of George A. Barker, deceased. From a judgment rendered on a verdict adjudging that a paper writing purporting to be the last will and testament of George A. Barker, deceased, admitted to probate by the Surrogate's Court, was not the last will and testament of said Barker, and, from an order denying defendant's motion for a new trial, she appeals. Reversed, and new trial ordered.

Argued before PATTERSON, P. J., and INGRAHAM, McLAUGHLIN, CLARKE, and HOUGHTON, JJ.

Albert W. Ransom (David Leventritt, of counsel, and Clayton J. Herrmance, on the brief), for appellant.

Parker & Ernst (Morgan J. O'Brien, of counsel, and Ashton Parker and J. Brownson Kerr, on the brief), for respondents.

CLARKE, J. The plaintiffs, the daughters of George A. Barker, deceased, brought this action under section 2653a of the Code of Civil Procedure to test the validity of a paper dated October 4, 1906, and admitted to probate by the decree of the surrogate of the county of New York on the 25th of March, 1907, as the last will and testament of George A. Barker, deceased.

The will is short and simple. After directing the payment of debts, funeral and testamentary expenses, it provides as follows:

"I give, devise and bequeath unto my wife Edith M. Barker, all my property and estate of every name, nature and description of which I die seized or possessed, or to which I may be entitled, including any and all interests in remainder or otherwise in the estate of George Bell, deceased. Lastly, I nominate and appoint my said wife, Edith M. Barker, executrix hereof."

Section 2653a of the Code of Civil Procedure, giving a right of action triable by a jury to determine the validity of a paper admitted to probate as a last will and testament, provides that on the trial of such an issue the decree of the surrogate admitting the will to probate shall be prima facie evidence of the due attestation, execution, and validity of such will; that the party sustaining the will shall be entitled to open and close the evidence and argument. He shall offer the will in probate and rest. The other party shall then offer his evidence. The party sustaining the will shall then offer his other evidence, and rebutting testimony may be then offered as in other cases. The burden of proof, therefore, rests upon the attacking party. It is the law of this state that, so long as a question of fact exists, it is for the jury, and not for the court (McDonald v. Metropolitan Street Railway Co., 167 N. Y. 70, 60 N. E. 282), and the same rule obtains in will contests. "Questions of fact arising in an action to determine the validity of a will are no different in this respect from questions of fact in any other case." Hagan v. Sone, 174 N. Y. 317, 66 N. E. 973. But these rules are also established by the same cases:

"Wills are not to be set aside by juries except for the gravest reasons. A person has the right to dispose of his property in such way and to such persons as he thinks best. It is only in a case where there is sufficient proof of

mental incapacity or of undue influence that courts or juries may annul his testamentary act." Hagan v. Sone, supra.

"If a court of review, having power to examine the facts, is dissatisfied with a verdict because against the weight or preponderance of evidence, it may be set aside." McDonald v. Metropolitan Street Railway Company, supra.

It is the duty of this court, mindful of the rule that wills are not to be set aside by juries except for the gravest reasons, to review the facts testified to in the case at bar, and to determine whether the verdict is supported by the evidence, or is contrary to the weight thereof.

George A. Barker died on the 24th of January, 1907, then about 62 years of age. He left surviving him two married daughters by his first wife. That wife died on September 4, 1905. Decedent and his first wife had been separated for many years prior to her death, for what reason, and under what circumstances, is not disclosed in the record. On the 1st of October, 1906, decedent was married to the defendant Edith M. Barker by a clergyman and in the presence of witnesses at his residence at Baldwins, Long Island. On October 4, 1906, the will was drawn and executed at his said residence. On the 9th of October he and his wife came to the city of New York, transacted some business, including the hiring of a safety deposit box, and then went to Saranac, in the Adirondacks, where they remained until October 22d, when they returned to Baldwins, arriving there on October 23d. On November the 19th they moved to the Cumberland Hotel, in the city of New York, and, after remaining there for a while, went to the Hotel Gramatan, Westchester county, where he died of cirrhosis of the liver and kidneys and arterial sclerosis. There is, and can be, no dispute as to the factum of the will. It was signed by the decedent and published and declared with all the formalities required by law, in the presence of two witnesses, who, at his request, and in his presence, and in the presence of each other, signed their names thereto. The daughters contest the will upon the ground that their father at the time he executed it was not of sound and disposing mind and memory, and that it was not his will, but that he was induced to make the same by undue influence. The court left three issues to the jury—incompetency, undue influence, and fraud. The jury returned a general verdict for the plaintiffs. The contention is that the decedent's mind had been so affected by long, continuous, and excessive use of spirituous liquors that at the time of making the will he was not possessed of testamentary capacity, and, further, that he was so subject to the influence of his wife that the will by which his whole property was left to her, to the exclusion of the two daughters of his first wife, was the result of her undue influence, and that undue influence so exercised constituted a fraud which vitiated the instrument.

There is no direct evidence of any kind or nature that Mrs. Barker knew that he was about to make a will or the contents thereof, or had asked him to make a will, or had exerted any influence, due or undue, in that behalf. Plaintiff's case depends entirely upon the inferences which they seek to draw from the relations which had existed for many years between the parties, and from his habits in the use of intoxicating liquors. It appears that for many years the defendant had lived openly

with the decedent in his various homes as his mistress. Whatever might have been attributed to that fact, if it had continued up to the time of the making of his will, and subsequently to the time of his death, is very greatly weakened, if not destroyed, by the fact of his ceremonial marriage to her, about the openness and validity of which there is no question, celebrated prior to the making of the will, and occurring one year and one month after his first wife's death. There is satisfactory evidence that upon his first wife's death, after their long estrangement—when begun and how caused not appearing in the evidence—he expressed the desire to an intimate friend to marry the defendant at once, indicating an intention at the first possible moment of making their long companionship, which had hitherto been illegitimate, legitimate; but upon the suggestion that, in deference to the feelings of others, he should defer the marriage until the so-called year of mourning had expired, he acquiesced, and after a year and a month carried out the intention which had long been in his mind. Marriage, under such circumstances, is as susceptible of the inference that the man desired to repair the injury done to his companion of years, to rehabilitate her so far as he could by giving her his name and his station in life, as of any other. What other reason for the marriage can be suggested? Of course, the history, the surroundings, and the precedent and attending circumstances are in such cases open to inquiry; but a meretricious relation transformed into a legitimate one, when the obstacle thereto has been removed, loses most, if not all, of the inference which might otherwise be drawn therefrom. See Leslie v. Leslie, 15 N. Y. Wkly. Dig. 56, affirmed on opinion below 92 N. Y. 636; Maynard v. Tyler, 168 Mass. 107, 46 N. E. 413; Matter of Buckley, 16 N. Y. St. Rep. 983, 2 N. Y. Supp. 24. Indeed, as we pointed out in Heyzer v. Morris, 110 App. Div. 313, 97 N. Y. Supp. 131, the fact that a man has left his property by a last will and testament to his mistress is not per se a ground for declaring that disposition invalid. And in Matter of Mondorf, 110 N. Y. 450, 18 N. E. 256, the Court of Appeals said:

"Even if his relations with Mrs. Schamberg were meretricious, the law does not on that account condemn a will made in her favor. Where such relations exist, all the circumstances attending the execution of a will which may be shown to have been induced thereby will be carefully scrutinized; but the right of a competent testator to make any disposition of his property which pleases him, although it may be unjust and unnatural, will not be curtailed."

The question of undue influence, however, where that influence is not physical—that is, within the legal definition of duress—can seldom be established by direct evidence, but, like any other fact, may be established by circumstances. But, as stated in Matter of Snelling, 136 N. Y. 515, 32 N. E. 1006:

"What the law terms 'undue influence' is not established by proof tending to show that the testator acted from motives of affection or gratitude, though the objects of her bounty were strangers to her blood. The influence or moral coercion, or by what other term designated, must be such as to overpower the will of the testator and subject it to the will and control of another, in which case it assumes the character of fraud."

Or, as said in Marx v. McGlynn, 88 N. Y. 357:

"There is another kind of undue influence, * * * and that is where the mind and the will of the testator has been overpowered and subjected to the

will of another, so that, while the testator willingly and intelligently executed a will, yet it was really the will of another, induced by the overpowering influence exercised upon a weak or impaired mind. Such a will may be procured by working upon the fears or the hopes of a weak-minded person; by artful and cunning contrivances; by constant pressure, persuasion, and effort, so that the mind of the testator is not left free to act intelligently and understandingly. It is not sufficient, however, for the purpose of establishing undue influence, to show that the will is the result of affection or gratitude, or the persuasion which a friend or relative may legitimately use; but the influence must be such as to overpower and subject the will of the testator, thus producing a disposition of property which the testator would not have made if left freely to act his own pleasure, and this kind of influence will not generally be presumed, but must be proved like any other fact by him who alleges it."

The decedent was a man of means. He was one of the executors under the will of George Bell and entitled thereunder during the life of a cestui que trust to a certain share in the income of the trust estate, and had a vested and inalienable estate and interest in one-third of the residuary estate of the testator, as decided by the Court of Appeals, since the making of the will at bar, in Stringer v. Young, 191 N. Y. 157, 83 N. E. 690. He did not know that George Bell's will would be so construed and had been of the opinion that he had but a life interest. This explains the phrase in the will "including any and all interests in remainder or otherwise in the estate of George Bell, deceased." He was an executor of George Bell's will, and attended to the business of the estate to the end of his life. He resided upon a handsome property at Baldwins, the title to which was in the name of the defendant. He undoubtedly was addicted to the use of liquor. He was a friendly man, who liked to, and did, entertain his acquaintances. He was fond of sailing and fishing and driving. The plaintiffs' case was developed in an inflated and exaggerated tropical atmosphere. The number of bottles taken from the house is relied upon as convincing proof of how much the decedent himself drank, irrespective of the number of occupants of the house or the guests entertained, and as to the time in which accumulated. An ordinary drink assumes Brobdingnagian proportions until reduced by cross-examination. Inconsiderate trifles are magnified into portentous events. As evidence of a weak and incompetent mind are cited the facts that upon one occasion, after election, he celebrated by having a bonfire; that upon another occasion he dressed up as Sandow, the Strong Man, with cotton batting for muscles, and with painted wooden bells, suppressing entirely the fact that this incident did not proceed from a delusion that he was Sandow, or an attempt to impose on others that he was Sandow, but was solely an incident of a Christmas party and a house minstrel show for the entertainment of friends. So of an incident of dressing up in Romeo slippers and a grotesque costume. It was reserved for cross-examination to show that it was on a similar occasion, a house party of a number of friends entertaining themselves in a way not unknown in various country and city mansions here and elsewhere, but gravely produced as a part of the plaintiffs' case as indications of mental incompetency, and these incidents unexplained are woven into the text of plaintiffs' hypothetical questions. He was fond of dogs. That he would fondle and caress a small black and tan and have chops cooked for it is urged as proof of mental weakness. And so from inn-

keepers, gardeners, and chambermaids and accidental observers of iso-lated and trivial incidents many things susceptible of explanation as ephemeral, the transitory results of drink, many others explained on cross-examination and entirely disproved, were woven into a hypothet-ical question of great length, assuming to be true everything hinted at or surmised in the evidence given by the witnesses for the plaintiffs, and is gravely propounded to two medical gentlemen who never saw the deceased and who give as their opinion that upon the day of the making of the will he did not have testamentary capacity. Leaving out of consideration the testimony of the medical experts based upon the hypothetical question, we are of the opinion that, assuming all of the plaintiffs' evidence to be true, it does not justify the conclusion that George A. Barker on October 4, 1906, when he executed his last will and testament, was mentally incompetent to make the same. On the other hand, we find his own books and papers, kept in his own handwriting, original checks, check books, stubs, memorandum book and diary, make altogether a careful, intelligent personal record begin-ning a considerable length of time prior to the making of the will and extending down to the 17th of January, seven days before his death, and which exhibit entire capacity to attend to business. Against this proof the opinion of an expert based upon such a hypothetical question hardly rises to the dignity of raising an issue which should be sent to a jury. It was in evidence that for some weeks before the marriage and the making of the will he had stopped drinking. In addition to that, the defendant has proved by many witnesses, the clergyman who conducted the marriage, by the county judge and surrogate who at-tended to business for Mr. Barker in relation to the sale of the place at Baldwins in November after the making of the will, by the county clerk, who was also an auctioneer and attended to the sale of the per-sonal property on the estate in November and December, by the law-yer who drew the will and received his instructions therefor, by old friends who had known him for many years, by the doctors who at-tended him, by officers of the safety deposit company from whom he hired a box on October 9th, and placed therein his will on his way to Saranac, and by business men with whom he had dealings, that he was capable, rational, and logical down to a day or two before his death. Further, two medical experts, upon hypothetical question framed by the defendant's counsel, stated that in their judgment the person pic-tured by the question had testamentary capacity at the time of the making of the will.

We have examined this voluminous record with the greatest care, and without further elaboration, for which there seems no need, we are of the opinion that the verdict is not sustained by the evidence, but, on the contrary, is against the great weight of the credible evidence in this case. We cannot escape the conclusion that the verdict was due to matters to which we regret to be obliged to allude. The trial coun-sel in his zeal and eagerness in behalf of his clients succeeded in creat-ing an atmosphere in the courtroom which we think could not fail to have its effect upon the jury. Against the repeated objections of the defense, and apparently uncontrolled by the court, under the guise

of arguing upon the admission or rejection of evidence, he repeatedly and persistently in effect summed up to the jury all through the case. In this way many things not in evidence got before the jury calculated to affect them upon a contest between the disinherited daughters of a first wife and the widow who had married their father under the circumstances disclosed. By the peculiar phraseology of his questions, counsel often succeeded in himself testifying rather than eliciting testimony from the witnesses. We think that counsel should learn that the verdict is not the only thing to obtain in a trial in a court of justice, but that it must be obtained in an orderly and proper manner, and that, if counsel transcend just and proper bounds, the result obtained by such methods cannot stand. The other matter is that the attorney who drew the will in controversy, and who was one of the subscribing witnesses, upon whose testimony to a considerable extent the defendant in this case would rely, after the probate of the will, entered into a contract with the defendant for a contingent fee of 25 per cent. of anything that Mrs. Barker should receive, and as collateral thereto received an assignment to the amount of $100,000 of her share, in consideration of which he agreed to represent her in any suit which might be commenced to secure her share of the George Bell estate. While this fact had no legitimate bearing upon the question of testamentary capacity of the decedent at the time he made the will, nor upon the question of undue influence exerted prior to or at the time of the making of the will, yet it was such a circumstance as could but prove grievously embarrassing when this attorney's testimony was being taken in support of the will in whose support he has such great and pecuniary interest. In the hands of such zealous and forceful counsel as represented the plaintiffs, it could not fail to have been made use of to the utmost degree in swaying the jury. We cannot ignore the fact that a jury is usually inclined to the view that a man should leave his property to his children, and is disinclined to follow the law as laid down by the court, that a testator of sound and disposing mind, and not governed by undue influence, has a right to leave his own property as he pleases. From the matters alluded to, we are persuaded that the jury was moved by sympathy and passion to return a verdict which in our opinion is against the great weight of the evidence. Under the doctrine of Hagan v. Sone, supra, it was not error to submit this case to the jury, but under the same case it is the duty of this court, charged with the responsibility of examining the facts, when it has determined, in its judgment, that the verdict rendered is against the weight of evidence, to unhesitatingly set that verdict aside and order a new trial.

The judgment and order appealed from should therefore be reversed and a new trial ordered, with costs to the appellant to abide the event. All concur.