In the Matter of Proving the Will of SARAH A. DELMAR, Deceased.

HENRY F. BARNES et al., Appellants; THE NATIONAL CITY BANK OF NEW YORK et al., Respondents.

Will — probate denied for testamentary incapacity — where evidence is conflicting Appellate Division should not reverse and direct probate but should grant new trial — meaning of phrase "sound and disposing mind and memory "— will should not, as matter of law, be admitted to probate where undisputed facts tend to show that testatrix did not understand situation of her property or general effect of instrument — evidence requiring submission to jury.

1. Where the evidence on the trial of objections to the probate of an instrument, offered as the last will of a deceased testatrix, permits the triers of fact to draw conflicting inferences as to her testamentary capacity, the Appellate Division should not reverse on the law a decree of the Surrogate's Court denying probate, and direct probate of the will, but should send the case back for a new trial.

2. By " sound and disposing mind and memory " is meant that the mind of testatrix as to its thinking and judging powers, at the time of executing her last will, must be clear enough to be capable of interfering with the disposition of the estate by a prior will with some degree of judgment and discretion. The testatrix must retain sufficient active memory to collect in her mind without prompting the necessary elements of the business to be transacted and to hold them a sufficient length of time to understand their relations to each other and to form some rational judgment in relation to them.

3. The law jealously guards the right of a person to dispose of his property by will, whatever his condition of health may be, but there comes a time when the ordinary death-bed will must be submitted to careful scrutiny to determine whether it meets the tests of testamentary capacity, and, where the undisputed facts tend to establish that by reason of failing memory testatrix did not understand the situation of her property or the general effect of the instrument executed by her, the will in question should not, as matter of law, be admitted to probate.

4. Evidence that presents a picture of a dying woman unable to recall the disposition she had made of her property by a prior will

and unable to form and express her will as to the disposition of her residuary estate does not necessarily or by reasonable inference lead to the conclusion that her testamentary intention was that she should die intestate as to a considerable portion of her estate, and where such was the effect of the instrument executed by her, the evidence should be submitted to the decision of a jury.

*Matter of Delmar*, 214 App. Div. 500, modified.

(Argued May 3, 1926; decided May 25, 1926.)

APPEAL from an order of the Appellate Division of the Supreme Court in the first judicial department, entered December 18, 1925, which reversed a decree of the New York County Surrogate's Court, entered upon a verdict, denying probate of a paper propounded as the last will of Sarah A. Delmar, deceased, and remitted the matter to the Surrogate's Court with a direction for probate.

*George Gordon Battle* for appellants.    If the reversal of the Appellate Division was actually upon questions of fact the failure to grant a new trial to contestants was error in law.    (*Weigand* v. *United Traction Co.*, 221 N. Y. 34; *Gregonis* v. *Philadelphia & Reading Coal & Iron Co.*, 235 N. Y. 152; *Gressing* v. *Musical Instrument Sales Co.*, 222 N. Y. 215; *Marks* v. *Cowdin*, 226 N. Y. 138; *Gilhooley* v. *Burghard*, 225 N. Y. 445; *Meisle* v. *N. Y. C. & H. R. R. R. Co.*, 219 N. Y. 317; *Middleton* v. *Whitridge*, 213 N. Y. 499; *Constantino* v. *Watson*, 219 N. Y. 443; *Junkermann* v. *Tilyou*, 213 N. Y. 404; *Maguire* v. *Barrett*, 223 N. Y. 49; *Queeney* v. *Willi*, 225 N. Y. 374.)    The opinion of the Appellate Division is not justified by the evidence. (*Matter of Seagrist*, 1 App. Div. 615; *Hagan* v. *Sone*, 174 N. Y. 317.)    A death-bed will should be carefully scrutinized.    (*Kingsley* v. *Blanchard*, 66 Barb. 325; *Matter of King*, 89 Misc. Rep. 641; *Darley* v. *Darley*, 3 Bradf. 49; *Matter of Murphy*, 48 App. Div. 216; *Matter of Lewis*, 81 Hun, 213; *Matter of Wheeler*, 5 Misc. Rep. 279; *Matter of Williams*, 141 N. Y. 572; *Matter of Mooney*, 73 Misc. Rep. 318; *Matter of Elster*, 39 Misc. Rep. 70; *Matter of*

*Eysaman,* 113 N. Y. 62; *Matter of Bowles,* 37 Misc. Rep. 566; *Matter of Goodwin,* 95 App. Div. 186.)

*Robert McLeod Jackson* and *H. Victor Crawford* for respondent. The question before this court is whether or not there was more than a mere scintilla of evidence tending to show that Sarah A. Delmar was incompetent to make her will. (*Matter of Barney,* 185 App. Div. 782; *Matter of Wolf,* 196 App. Div. 722; *Matter of Eno,* 196 App. Div. 131.) The true criterion is ability to understand the will in question. (*Stewart's Executor* v. *Lispenard,* 26 Wend. 255; *Matter of Foreman,* 54 Barb. 287; *Martin* v. *Martin,* 15 Grant's Ch. [U. C.] 586; *Matter of Mabie,* 5 Misc. Rep. 179; *Matter of Carpenter,* 145 N. Y. Supp. 365; *Children's Aid Society* v. *Loveridge,* 70 N. Y. 387; *McLaughlin* v. *McLaughlin,* 26 Can. S. C. 646; *Menzies* v. *White,* 9 Grant's Ch. [U. C.] 574; *Thomson* v. *Torrance,* 28 Grant's Ch. [U. C.] 253; *Watts* v. *Bullock,* 11 Ky. 252; *Matter of McClear,* 214 App. Div. 682; *Matter of Seagrist,* 1 App. Div. 615; 153 N. Y. 682; *Matter of McGraw,* 9 App. Div. 372; *Matter of Knight,* 87 Misc. 577.)

*Robert S. Conklin* for Fanny P. Evans, respondent. The testatrix, at the time of the execution of the will, was possessed of testamentary capacity, and there is no evidence to the contrary. (*Matter of McClear,* 214 App. Div. 682.) The events attendant upon the drafting of the will and the conditions described are insufficient to establish testamentary incapacity. (*McLaughlin* v. *McLaughlin,* 26 Can. S. C. 646; *Watts* v. *Bullock,* 11 Ky. 252; *Matter of Burnham,* 201 App. Div. 621; 234 N. Y. 475; *Dobie* v. *Armstrong,* 27 App. Div. 520; 160 N. Y. 584; *Matter of Eno,* 196 App. Div. 131; *Matter of Loehr,* 187 App. Div. 957; *Pettit* v. *Pettit,* 149 App. Div. 485; *Delafield* v. *Parish,* 25 N. Y. 9; *Matter of Dunn,* 184 App. Div. 386; *Matter of Snelling,* 136 App. Div. 515;

*Matter of Heaton*, 224 N. Y. 22; *Calligan* v. *Haskell*, 143 App. Div. 574; *Matter of Clapp*, 97 Misc. Rep. 576.)

POUND, J. The contest rests solely on the testamentary capacity of testatrix. If the evidence, which is not conflicting except for the opinion of an expert witness who never saw the deceased, permits the triers of fact to draw conflicting inferences on this point, the Appellate Division should not have reversed on the law and directed the probate of the will but should have sent the case back for a new trial. (*Hagan* v. *Sone*, 174 N. Y. 317; *Middleton* v. *Whitridge*, 213 N. Y. 499, 503; *Matter of Burnham*, 234 N. Y. 475. And see *Matter of Eno*, 196 App. Div. 131, 155.) The question for us is, therefore, whether the undisputed evidence establishes as matter of law that testatrix was of sound and disposing mind and memory when she executed the instrument now offered for probate.

Testatrix was a woman of about seventy-five years of age. She had property of the value of upwards of $152,000. She had been active in the management of her own affairs and was normally possessed of a sound and vigorous mind. At the time of the execution of the will in question she was in the last stages of Bright's disease and chronic myocardial degeneration. She died two days thereafter. Unquestionably she was to some degree capable of forming and expressing wishes as to the disposition of a portion of her property. Unquestionably her mental and physical faculties were greatly impaired. She was " on the borderland between consciousness and insensibility." (*Matter of Eysaman*, 113 N. Y. 62, 70.) She was unable to fix her attention continuously on the business of making the will and as a result the will disposed of less than one-half her property although by a prior will, which the present revoked, she had fully disposed of it. The law jealously guards the right of a person to dispose of his property by will, whatever his condition of health may be, but

there comes a time when the ordinary death-bed will, prepared when the testator is sinking slowly but surely to his end, must be submitted to careful scrutiny to determine whether it indeed meets the tests of testamentary capacity. Submitted to such tests, it seems clear that the will in question should not as matter of law have been admitted to probate.

The following undisputed facts tend to establish that by reason of failing memory she did not understand the situation of her property or the general effect of the instrument executed by her.

When the lawyer who came to draw her will at the request of one of her friends and who was also a subscribing witness, asked if she was willing to make her will she said "yes" but she also said: "It is not necessary. I have a will already made." This was a fact. A prior will had been executed by her on November 22, 1906, which disposed of her entire estate. She undertook to tell that the will would be found in a trunk but a search revealed only a blank form of will. She said: "Oh, it is not filled," and added "how stupid of me." She then went on to give her instructions, largely in response to questions asked her by the lawyer. She thereupon indicated her desire to give two annuities of $50 per week, one to a sister and one to a nephew, for life, and several bequests amounting in the aggregate to $45,000. While giving these instructions she would drop into periods of deep sleep from which she would be aroused with some difficulty.

When it came to the disposition of her residuary estate the lawyer testified as follows:

" Q. When you mentioned to her about the residuary clause, that is the clause which provides for the rest of the estate, is it not? A. Yes.

" Q. That is a clause that is put in a will by every

careful lawyer to provide for the balance of the estate that is not covered by the will? A. Yes.

" Q. And you asked her what she was going to do about that? A. Yes.

" Q. Tell us the language that you used, please? A. I said Mrs. Delmar, what do you want done with the money that is left over after these annuities have been satisfied, something like that. I cannot tell you the exact words. And she said there wont be any money left over. Well, I said, yes there will, because they get this money for life and when they are finished with the annuities there will be the principal. Well, she said, they are to have $50 a week for life and it will be used up, and I said to her, if you want it that way then you must say how long; no, she did not say how long, but they would have $50 a week until used up, and then I said, you must say how long they are to have the $50, unless there is to be a residue, and she said it is for life, and she was tired.

" Q. She was tired? A. Yes, she was tired, and I think it was her fatigue that kept her from understanding it.

" Q. Did you say anything further to her? A. I said it to her twice and the Doctor tried and the Doctor said, you cannot get this across."

And the doctor, who was in attendance and was also a subscribing witness, testified as follows:

" Q. Doctor, what do you remember about the attempt on Mr. Jackson's part to provide for the residuary, to get instructions on the residuary clause from her? A. He said, Mrs. Delmar, what is to become of the remainder of your estate, the residual estate, and she looked at him. She was awake, and then she looked at me as though she were mystified and he repeated the question two or three times, and thinking that she heard me better and was more used to me, I repeated the question to her and she would shrug her shoulders this way as if, I do not comprehend or it does not matter or something like that.

1926.]        Opinion, per POUND, J.      [243 N. Y. 7]

At any rate, he was not able to get over to her what was intended; at least, she did not respond.

And on cross-examination he testified:

" Q. When it came down to what is known as the residuary clause, the clause disposing of her remainder of her estate, tell us what she said about that? A. He brought up that question. He said, Mrs. Delmar, what is to become of the residuary part of your estate. She looked at him blankly and he repeated the question two or three times and waited a little bit, and then I repeated the question for him and she could understand me better perhaps. She looked at me and threw out her hands as though she did not comprehend or did not care or what not. She was apparently not able to take in the thing or else she did not want to.

" Q. Mr. Jackson testified that he tried to explain to her the principal from which these incomes, these two annuities would be derived, and that principal would have to be disposed of as part of her residuary estate. Do you remember his talking to her about that? A. Not in so many words.

" Q. Nothing said? A. No, I do not. I remember though as a matter of fact, we lost a good deal of time trying to make her see this.

" Q. Apparently he could not get it across to her? A. No.

" Q. And that was your opinion at that time that he could not get it across? A. Yes, I think at the end of it I said I did not believe you will make her understand this tonight.

" Q. You told him that? A. I think she is too tired, I told him. I think she needs rest right now.

" Q. And it was after that that her signature was put on the will, is that right? A. After what?

" Q. After that incident about the remainder of the estate? A. After she could not comprehend what he said to her."

We thus have a picture of a dying woman unable to recall the disposition she had made of her property by a prior will and unable to form and express her will as to the disposition of her residuary estate.

Clearly this evidence does not necessarily or by reasonable inference lead to the conclusion that the testamentary intention of the testatrix was that she should die intestate as to a considerable portion of her estate and that such was the effect of the instrument executed by her. Assuming that she had no debts, the interest on the residuary estate would probably be adequate to pay the annuities so that the undisposed of residue was approximately $100,000. Her mind was a blank in regard thereto and to the disposition thereof. It is not a question of some evidence merely. (*Dobie* v. *Armstrong,* 160 N. Y. 584.) It was evidence which should have been submitted to the decision of a jury.

What is meant by "sound and disposing mind and memory?" The answer has been frequently given. The mind of testatrix as to its thinking and judging powers at the time of executing the instrument proposed for probate must be clear enough to be capable of interfering with the disposition of the estate by a prior will with some degree of judgment and discretion. The testatrix must retain sufficient active memory to collect in her mind without prompting the necessary elements of the business to be transacted and to hold them a sufficient length of time to understand their relations to each other and to form some rational judgment in relation to them. (*Delafield* v. *Parish,* 25 N. Y. 9, 44; *Matter of Will of Snelling,* 136 N. Y. 515; *Matter of Heaton,* 224 N. Y. 22, 29.)

Judged by this test the evidence is not conclusive from which it may be inferred that she had "a fixed wish and judgment in the disposition of her property" or had any clear idea of the amount of her residuary estate or the effect thereon of the execution of the will and the

1926.]                Statement of case.    .    [243 N. Y. 15]

prior disposition of it. Obviously she had had in mind some changes to be made in the legatees and in the amounts of their legacies. As a codicil the instrument might have been efficacious, but that testatrix for an instant contemplated that more than one-half of her estate should go to her heirs at law or next of kin nowhere appears with sufficient probative force to be established as matter of law by any test as to the sufficiency of evidence that might be applied.

The order of the Appellate Division should be modified so as to grant a new trial, with costs to abide the event.

HISCOCK, Ch. J., CARDOZO, MCLAUGHLIN, CRANE and LEHMAN, JJ., concur; ANDREWS, J., absent.