In the Matter of the Probate of the Last Will and Testament and Codicil Thereto of LUELLA J. ROBERTS, Deceased.

MARTHA MATILDA MACBAIN and Another, Appellants; FREDERICK M. WHITNEY and Others, Respondents.

Fourth Department, November 13, 1935.

*John Van Voorhis' Sons* [*Eugene Van Voorhis* and *John Van Voorhis* of counsel], for the appellants.

*Werner, Harris & Tew* [*George H. Harris* of counsel], for the proponent-respondent.

*Harris, Beach, Folger, Bacon & Keating* for the Rochester Friendly Home and Pleasant View Home, respondents.

*Ralph H. Culley,* for the First Church of Christ, Scientist, Rochester, N. Y., respondent.

*James G. Dale,* special guardian for Maurice Flanders, formerly an infant, respondent.

LEWIS, J. When the will and codicil of Luella J. Roberts, deceased, were presented for probate, objections alleging the incompetency of the testatrix, undue influence and fraud were filed by Mary Willoughby Armstrong, the sole next of kin, and Martha Matilda Harper MacBain, who claims to be the sole legatee named in a prior will of the decedent. Upon the trial which followed the surrogate dismissed the objections which alleged incompetency. The verdict sustained the will and thereupon a decree of probate was entered from which the two objectors appeal.

We shall confine our decision chiefly to the ruling made at the close of the evidence which dismissed the contestants' objections alleging the incompetency of the testatrix.

Luella J. Roberts died on the 24th day of February, 1930, a resident of Rochester, N. Y. The cause of her death was myocarditis. It also appears that the testatrix had suffered for more

than five years from arteriosclerosis in an advanced stage and nephritis. She was in her seventy-ninth year and was the widow of Owen M. Roberts, who had died in 1910.

At the time of her death, and for many years prior thereto, the testatrix had made her home with the appellant, Martha Matilda Harper MacBain. The acquaintance between the testatrix and Mrs. MacBain began in 1883 when the latter — who was then Miss Harper — entered the household of the testatrix as a general housemaid. Commencing when Miss Harper was dependent financially and otherwise upon the kindly consideration extended to her by the testatrix and her husband, the relationship continued through forty years of a variety of experiences which by chance brought a period of financial distress to the formerly affluent Roberts family at a time when financial independence had come to Miss Harper. Through it all a bond of affection and mutual trust and helpfulness existed between these two women. As widowhood and advanced age came upon the testatrix she continued to receive from Miss Harper the same devoted care and attention which had characterized their friendship. During all this time, although Miss Harper meanwhile had married Robert A. MacBain, the testatrix and the younger woman made their home together. The financial support of the three members of the household, including Mr. MacBain, came largely from a business which Miss Harper had commenced in a small way while a servant in the Roberts' home. It involved the preparation and sale of a hair tonic from a formula which she had brought from Canada as a girl in 1882. The production and sale of this preparation soon became commercially profitable and developed so rapidly that it became necessary to acquire a manufacturing plant. Meanwhile Miss Harper had also established in Rochester a hairdressing parlor in which she had featured the "Harper Method" of treating the hair and skin. This enterprise also met with a pronounced success and in time several hundred "Harper Method" operators were established in the cities of this country and Europe.

The financial success which had rewarded the efforts of Miss Harper also indirectly benefited the testatrix who, in the latter years of her life, again came into possession of a substantial estate. There is proof that in the year 1913 she executed a will, which has since been lost, in which it is claimed Miss Harper was named as the sole beneficiary. On April 18, 1925, the testatrix made the will which is now the subject of this proceeding. The codicil was executed December 12, 1925. The draftsman was an attorney at law who had been consulted by the testatrix on various legal matters for a period of six months prior to the date of the will.

By the will and codicil the testatrix made a number of substantial bequests to charitable organizations and to individuals, including Mrs. MacBain, and named the attorney-draftsman as executor and as residuary legatee.

From this brief statement of facts gathered from a voluminous record we proceed directly to the principal question which we shall consider, viz.: Does the record contain evidence sufficient to raise an issue of fact as to the competency of the testatrix? If so, that question should have been submitted to the jury. (*Hagan* v. *Sone*, 174 N. Y. 317; *Matter of Delmar*, 243 id. 7.)

Before reviewing the evidence upon which the appellants claim the jury might have found the testatrix incompetent to make a will, we may well consider the rule of law by which such proof must be tested. " What is meant by ' sound and disposing mind and memory? ' The answer has been frequently given. The mind of testatrix as to its thinking and judging powers at the time of executing the instrument proposed for probate must be clear enough to be capable of interfering with the disposition of the estate by a prior will with some degree of judgment and discretion. The testatrix must retain sufficient active memory to collect in her mind without prompting the necessary elements of the business to be transacted and to hold them a sufficient length of time to understand their relations to each other and to form some rational judgment in relation to them." (*Matter of Delmar*, 243 N. Y. 7, 14.) Another ruling which we may well adopt as our guide in this inquiry is to be found in *Delafield* v. *Parish* (25 N. Y. 9, 29), where it is said that " it is essential that the testator has sufficient capacity to comprehend perfectly the condition of his property, his relations to the persons who were, or should, or might have been the objects of his bounty, and the scope and bearing of the provisions of his will." (See, also, *Matter of Snelling*, 136 N. Y. 515.)

Having in mind that the will which is now before us was dated April 18, 1925, and that by its terms the testatrix has made a number of substantial bequests to charitable organizations and individuals, we will refer to certain evidence offered by the contestants which we believe presented a question of fact whether the testatrix knew " the scope and bearing of the provisions of [her] will."

The witness Nellie Wilson Wardin testified that in a conversation had in the early part of 1925, the testatrix stated to her: " I am leaving everything to Mattie [Mrs. MacBain]; everything I have goes to Mattie. * * * I suppose, Mrs. Wardin, you don't know anything about 'our affairs, but I wouldn't have anything to leave if it hadn't been for Mattie's business arrangement for my affairs throughout these years." The contestants also called as a witness

Mrs. Hattie Lusk who had known the testatrix since 1887 and was in the habit of visiting her frequently. This witness testified that on a number of occasions in 1925 the testatrix in speaking of " money matters " told her, " everything would have to go to Mattie [Mrs. MacBain], to pay her for the debt she owed her. She said ' she saved my home for me, and she should have my property,' and she often said that in years afterwards." At another point in her testimony the witness stated that the testatrix had told her in conversations relating to her property had after 1925 that " Mattie was to have everything to pay her for what she had done for them." There is also testimony from Ann Harper, a niece of Mrs. MacBain, who swore that on an occasion in 1927 when she was staying in the house in the absence of Mr. and Mrs. MacBain, the testatrix told her, " Well, everything I have is hers [Mrs. MacBain's]." That the testatrix made such a statement to this particular witness is of special significance in view of the fact that under the will in question, already executed, the testatrix had made her a bequest of $5,000, and under the codicil the same witness is given life use of an additional $5,000 with remainder to the residuary legatee and his heirs. The witness Mina Ramsdell also testified that in May, 1928, she talked with the testatrix telling her that at a convention of representatives of the Harper method which was about to be held it was planned to present a diamond pin to Mrs. MacBain. To this the testatrix replied: " I am very sorry it's a diamond pin, because I was going to give her my diamond pin — and in fact all I have will be hers."

The evidence of the four witnesses mentioned above, which was received without objection, was admissible for the purpose for which it was offered. (3 Wigm. Ev. [2d ed.] p. 734, § 1739.) The jury could have accepted this evidence as worthy of belief or rejected it as untrue. In view of the fact that the will offered for probate contains numerous bequests to individuals other than Mrs. MacBain and to charitable organizations, we believe the evidence mentioned above was sufficient, if believed, to justify a finding by the jury that the testatrix did not know " the scope and bearing of the provisions of [her] will." (Delafield v. Parish, supra, p. 29.)

The record also contains the testimony of seven lay witnesses who were called by the contestants and described the appearance, conversations and actions of the testatrix on various occasions during the year when the will was executed or prior thereto. Each of these witnesses characterized the behavior of the testatrix as that of an irrational person.

Finally, the contestants called as an expert, Dr. John L. Van De Mark. This witness had specialized in the study of mental

diseases and had a record of distinction in that field of medicine. A question was propounded to him which assumed as hypotheses many of the principal facts which had been proved upon the trial which related themselves to the mental capacity of the testatrix. He was then asked his opinion as to the competency of the testatrix on the 18th day of April, 1925, or at any time thereafter. The witness testified that he believed the testatrix was then incompetent. He also testified that he believed she then suffered from senile dementia.

Although there is no proof that Dr. Van De Mark had ever known the testatrix, we conclude that his testimony, supported by the evidence to which reference has been made, constituted sufficient proof to present a question of fact which should have been submitted to the jury. (*Hagan* v. *Sone, supra,* p. 319; *Matter of Delmar, supra,* p. 10.)

Passing to another phase of the case, we believe the rights of the appellants were prejudiced upon the trial by a ruling which permitted the jury to take into the jury room and to consider a written memorandum, prepared and submitted by counsel for the proponent, which had never been received in evidence nor offered as a part of the record proof. Upon its face the memorandum clearly appears to be a computation prepared to show the amount which the draftsman of the will might be expected to receive as the residuary legatee. It is not accurate in its statement of a number of items which had been made the subject of proof upon the trial; it suggests various contingencies, of which there is no proof, which it is claimed would reduce the share of the residuary legatee. For example, the memorandum contained the following parenthetical statement which relates to an item of alleged increase in the value of the estate in an amount exceeding $13,000: " (If there had been no contest Martha Matilda Harper MacBain would have received the life use of this additional amount and Frederick M. Whitney [residuary legatee] would have received the remainder therein, *but the contest has involved expenses which will most certainly exhaust the increases in the estate.)* "

In the absence of any proof as to expenses incident to this probate proceeding, it is difficult to justify the jury's consideration of this statement.

True, the surrogate admonished the jury that the memorandum was not an exhibit in the case. He said further, " It is just part of his argument "— referring to counsel for the proponent. But the jury was also instructed, " It is a summary of a complex situation. I will let them have it as a summary. * * * *You can give it such weight, or any part of it, as you see fit."* The right to

challenge this ruling was preserved to the appellants by objection and exception which we conclude were well taken.

We cannot say that the memorandum thus submitted to the jury influenced the verdict; nor can we say with assurance that it failed of such influence. Certain it is, however, that in part it was an extraneous influence, not entirely supported by the record, and was presented to the jury to guide the deliberations upon which they were about to enter.

It is a salutary rule — not a mere " dictate of formalism "— which requires us to protect a verdict against any possibility of a miscarriage of justice which might result from a jury's consideration of a statement containing unproved facts. (*Lamphear* v. *MacLean*, 176 App. Div. 473; *Long* v. *Payne*, 198 id. 667.)

The decree and order from which appeal is taken should be reversed on the law and a new trial granted, with costs to abide the event.

All concur. Present — SEARS, P. J., TAYLOR, EDGCOMB, THOMPSON and LEWIS, JJ.

Decree and order reversed on the law and a new trial granted, with costs to the appellant to abide the event, payable out of the estate.