Matter of Proving the Last Will and Testament of
AMELIA GERTRUDE CUTTER, Deceased, as a Will of
Real and Personal Property.

(Supreme Court, New York Trial Term, May, 1917.)

Wills — execution of — testamentary capacity — undue influence — evidence — trial — verdict — when new trial ordered.

> Upon reversing a decree denying probate of a will on the
> ground that the testatrix lacked mental capacity when it was
> made and that its execution was procured by fraud and undue
> influence, the opinion of the Appellate Division stated that the
> testatrix had a sound mind and disposing memory when she
> made the will and held that the evidence did not support the
> charge of undue influence and fraud and directed a new trial
> in the Supreme Court before a jury of the material questions of
> fact arising upon the issues between the parties.  Upon the new
> trial the court directed a verdict in behalf of the proponents
> upon the issue of undue influence and fraud on the ground that
> there was no legal evidence to support such charges and sub-
> mitted to the jury the sole question of the mental capacity of
> the testatrix.  *Held,* that as upon the testimony given upon the
> new trial, in the light of the opinion of the Appellate Division,
> the court might have properly directed a verdict on the ques-
> tions submitted to the jury, a motion to set aside the verdict
> of the jury by which it was found that the testatrix had not
> testamentary capacity at the time of the execution of her will
> will be granted and a new trial ordered, as it was evident that
> the jury had failed to discharge its duty within the rules of
> law explained to it and that it was led away by the recital of
> the caprices, peculiarities, disgusting and indecent habits, etc.,
> of testatrix which in themselves were not inconsistent with the
> possession of sufficient testamentary capacity to execute the
> will.

MOTION to set aside the verdict of a jury.

Beekman, Menker & Griscom (John B. Stanchfield,
of counsel), for proponents.

Wickersham & Taft (Henry W. Taft, appearing),
for objectors.

GREENBAUM, J. Motion to set aside the verdict of the jury. The Appellate Division reversed the surrogate's decree,* which found that the testatrix, Amelia Gertrude Cutter, lacked mental capacity when the instrument offered for probate was executed and that its execution was procured through fraud and undue influence. The opinion of the Appellate Division, concurred in by a unanimous court, after reviewing the salient facts bearing upon the issue of mental incapacity, emphatically stated that the " testatrix had a sound mind and disposing memory," and, after a detailed recital of the provisions of the alleged will and of prior wills, the court also held that the evidence did not support the charge of undue influence and fraud, and directed a new trial before a jury in this court " of the material questions of fact arising upon the issues between the parties." Upon the trial this court directed a verdict in behalf of the proponents upon the issue of undue influence and fraud, upon the ground that there was no legal evidence to support these charges, and submitted to the jury the sole question of the mental capacity of the testatrix. An analysis of the evidence upon this trial, contrasted and compared with that submitted upon the trial before the surrogate, discloses no significant or important differences as to the facts. It is true that some witnesses called upon the first trial in behalf of the proponents, as well as some called for contestants, were not examined upon this trial, and others not previously called by either testified upon this trial. Much of the added testimony in favor of the proponents tended to strengthen their claim of the mental capacity of the testatrix, and some of the testimony in behalf of the contestants tended to give further corroboration of the penuriousness, the filthy and disgusting

---

* See 89 Misc. Rep. 663.—[REPR.

habits and the eccentricities of the testatrix. But the picture of the testatrix as portrayed in the opinion of the Appellate Division, which must control this court, does not materially differ from that which must be drawn from the array of all the evidence most favorable to the contestants. Indeed, as I view the testimony, it seems to me that in the light of the Appellate Division's opinion it would have been appropriate to have directed a verdict in behalf of the proponents upon the issue of lack of mental capacity. It will serve no useful purpose here to attempt a lengthy detailed review of the evidence nor to dissect the provisions of the paper propounded and to compare them with those of the prior wills. It seems to be sufficient to state that the evidence overwhelmingly establishes that the provisions of the last will were peculiarly the product of the strong, dominant will which the testatrix unquestionably possessed, even though its vigor had been impaired by disease and age, and that the important changes made by her were indicative of the possession on her part of a mind able to comprehend the full extent and nature of her estate and of those who had any claim upon her bounty. When one pictures this wretched, pitiable woman controlled by an overpowering passion or greed for money coupled with a corresponding reluctance to part with any of it, realizing, as she did, her approaching end and that she must soon part with her idol, it is easy to understand that her mind was singularly alert with regard to the subject of the disposition of the large fortune which came to her upon her husband's death. She was full of the subject, and discussed it with those in whom, for the time being at least, she seemingly reposed confidence, even though it may be fairly assumed that a woman of her penurious, niggardly nature distrusted every one about her, fearful lest they were trying to ingratiate themselves with her to

secure her money. But the very circumstance that money was her dominating passion indicates that she would be peculiarly prone to comprehend what she possessed, and to be fully aware of the fact that in the disposition of the large fortune she deliberately discriminated against her own husband's relatives, who had rarely come into their lives and for whom concededly she entertained a contempt. Of course, it would be natural to expect some of the witnesses who came in touch with this woman and who knew her to be possessed of much wealth to regard her mode of life, her views and actions, as irrational. A striking illustration of the value to be attached to a layman's testimony as to how the action of the testatrix impressed her is found in the testimony of Mrs. Yaeger, a witness called by the contestants, who stated that the acts of the testatrix on the day when the paper offered for probate was executed impressed her as rational, but that on subsequent days they impressed her as irrational. But such impressions of laymen have little value or force in a case containing the features here presented when one bears in mind that the real test in law of mental capacity is whether, when she executed the will, she possessed sufficient mental power to comprehend the condition and extent of her property, and realized the act of making her last will and testament and understood what disposition she was thereby making of her property. The evidence is practically undisputed that her memory of persons and events was good; that she had stated to others, including the lawyer's clerk " Jakey," who was an important witness for contestants, that the bequest of $500,000 to his employer was excessive, and was inserted in the prior wills of herself and of her husband through some error, and she would reduce it to $50,000. It is also practically undisputed that she had frequently stated that she did not care for her hus-

band's relatives, and that she had been considering a radical change in the disposition of her large residuary estate. The two notable changes in her last will were the reduction of a legacy in the earlier will of $500,000, bequeathed to a lawyer of the Cutters, to $50,000, and the change in the residuary clause of the former will which bequeathed the bulk of the estate to relatives of Mr. Cutter, in superseding it by a bequest of this large sum to philanthropic uses. These important changes in the will indicate that the testatrix did what would be naturally expected of one possessed of reasoning faculties. The law looks with suspicion upon a large bequest to a testator's lawyer, and it is also quite natural to expect that a woman like Mrs. Cutter, after making substantial provisions for those whom she regarded as friends of herself and her husband, and after making provisions for her own and her husband's relatives, for whom she cared little, should provide that her residuary estate should go to philanthropic uses. In other words, the provisions of the paper offered for probate do not indicate a lack of mental capacity, but on the contrary furnish strong evidence of a rational mind and of a disposition of the property of the testatrix in the way she desired. It seems to me quite evident that the jury failed to discharge its duty within the rules of law explained to them, and that they were led away by the recital of her caprices, her peculiarities, her disgusting and indecent habits, her niggardliness, which in themselves were not inconsistent with the possession of a mentality which enabled her to understand the nature and extent of her estate and the disposition thereof she desired to make, as provided in the instrument which she signed as her last will and testament. The verdict must be set aside and a new trial ordered.

Motion granted.