In the Matter of the Petition of WILLIAM M. SULLIVAN, Appellant, for Probate of the Will of AARON BANCROFT, Deceased.

CORNELIA B. BENNETT, Appellant; CARRIE B. ARBECAM, Respondent.

**Will — insufficiency of evidence to warrant finding of fraud or undue influence.**

Where a testator had become estranged from his daughter and had turned her out of his home, evidence that while this feeling on the part of the testator remained, another daughter told him a falsehood reflecting on the character of the contestant and threatened that she would see that the contestant did not receive anything from the father's estate, is not sufficient to justify a finding of fraud or undue influence.

*Matter of Sullivan,* 192 App. Div. 885, reversed.

(Argued September 27, 1920; decided October 12, 1920.)

APPEAL from an order of the Appellate Division of the Supreme Court in the second judicial department, entered April 9, 1920, which affirmed a decree of the Kings County Surrogate's Court denying probate of the will of Aaron Bancroft, deceased, after a jury had determined that it had been procured by fraud and undue influence.

The facts, so far as material, are stated in the opinion.

*Edward E. Hoenig* for appellant. The finding of the jury was contrary to law and contrary to the evidence and weight of evidence. The objections should have been dismissed and the will directed for probate. (*Brick* v. *Brick*, 66 N. Y. 144; *Matter of Ruef*, 180 App. Div. 204; 223 N. Y. 582; *Matter of Fleischmann*, 176 App. Div. 786; *Matter of Powers*, 176 App. Div. 456; *Matter of Dunn*, 184 App. Div. 386; *Matter of Goodhart*, 173 App. Div. 257; *Matter of Brand*, 185 App. Div. 135; *Lesster* v. *Lesster*, 178 App. Div. 438; *Matter of Snelling*, 136 N. Y. 515; *Matter of Caffrey*, 95 Misc. Rep. 471.)

*Thomas R. Martin* for respondent. The main question in the case and around which the parties contended, was one of fact that must be regarded as having been put at rest by the verdict of the jury. (*Delafield* v. *Parish*, 25 N. Y. 9; *Woodbury* v. *Woodbury*, 141 Mass. 329; *Boyd* v. *Boyd*, 66 Penn. St. 283; *Whitcomb* v. *Whitcomb*, 205 Mass. 312; *Emery* v. *Emery*, 222 Mass. 441; *Hoffman* v. *Hoffman*, 192 Mass. 419.)

CRANE, J. On December 20, 1917, Aaron Bancroft, of Brooklyn, New York, made his last will and testament, wherein he devised and bequeathed all of his property to his daughter, Cornelia Bancroft Bennett. He died on the third day of October, 1918, leaving him surviving the said legatee and another daughter, Carrie B. Arbecam. The latter filed objections to the probate of the will and the matter came on for trial before the surrogate of Kings county and a jury. The only question submitted

to the jury had been formulated as follows: " Whether the paper purporting to be the last will and testament of Aaron Bancroft was procured by fraud or undue influence practiced upon the said Aaron Bancroft." The jury found that it had and the decree of the surrogate thereupon denied probate of the will. This determination was affirmed by the Appellate Division, two justices dissenting.

We are now called upon to say whether there is any evidence by which the jury could have reached its conclusion.

The testator for many years had lived at 163 South Oxford street in the borough of Brooklyn, city of New York. Besides the two daughters, he had a son, George, evidently of mature years, who had died two or three days before the testator made his will. The son had been the cause of family trouble.

In 1910, the contestant, Mrs. Arbecam, came to live with her father and mother at their home in South Oxford street. She had resided for about twenty-five years in Boston, Massachusetts, until shortly after the death of her husband. About this time some one had written an anonymous letter to the father, informing him that George was a degenerate, and advising an investigation of his conduct. A charge of similar nature had also been made to the district attorney of Kings county. The letter had come into the possession of the two sisters who, after consultation with lawyers and a talk with the brother, forwarded it to their father. He became very angry. Some one informed him that his daughter, Mrs. Arbecam, had instigated the scandal and was responsible for the letter and the report to the prosecuting authorities. He ordered Mrs. Arbecam from his house and said that she could not return and that he would not forgive her. This must have occurred in 1910 as Mrs. Arbecam left her father's house in May of that year and soon thereafter returned to Boston.

Whatever way we may view the evidence or the reasonable inferences to be drawn therefrom, the surrogate ruled that there was no evidence in the case that Mrs. Bennett ever told her father that her sister, Mrs. Arbecam, wrote the letter which reflected upon the character and life of her brother, George, and that it would, therefore, be impossible for them to find that there was any fraud or undue influence exercised upon the decedent by virtue of any such suggestion. He further charged in these words: " The testimony in that respect fails entirely and all the testimony that was introduced in that case, subject to being connected with the possible proof, that Mrs. Bennett did tell her father that thing, has been stricken from the case."

All such evidence had not been stricken from the case, for the facts as above related appear in the testimony and were not stricken out.

The relations of this father and his two daughters, therefore, after 1910 appear to be that Mrs. Arbecam had been turned out of his home, he believing that she was responsible for the disagreeable charges made against George. He continued to reside with his daughter, Mrs. Bennett, at 163 South Oxford street. There is no evidence that his feeling toward Mrs. Arbecam ever changed.

Four or five years after the incident about the letter, Mrs. Bennett went to see her sister in Boston, and a dispute arose over .a horse-shoe pin belonging to their mother in her lifetime. Mrs. Bennett wanted it and Mrs Arbecam refused to give it to her. Thereupon, it is said that Mrs. Bennett accused her sister of being " fast." Mrs. Arbecam testified as follows: " And then she said she and Mr. Sullivan said I was fast and they told Papa that and Papa believed it. * * * She said that Mr. Sullivan and her would see that I didn't get a dollar from my father's estate."

Mr. Sullivan was the man who drew the will. The

surrogate by reason of this testimony charged the jury as follows:

" The only claim in this case is that Mrs. Bennett told her sister, when her sister refused to sell to her the diamond pin, the horse-shoe diamond pin, that she would have her revenge. Again, that she told her that she and Mr. Sullivan would see that she, Mrs. Arbecam, never received a dollar from her father, either in his lifetime or after his death, and that Mrs. Bennett told Mrs. Arbecam that her father believed that she was fast and that Mr. Sullivan and she had told the father that she was fast.   *   *   *

" If under this caution you find that Mrs. Bennett did tell her father that her sister, Mrs. Arbecam, was fast, and that he believed it, you may then consider whether or not she thereby unduly influenced her father in the act of executing his will.

" If you find that Mrs. Bennett did tell her father that her sister was fast, you may then consider whether this statement, if you find that it was made, was an influence, a provocation to the testator in the making of his will as it was made."

We think that this evidence was insufficient to justify the jury in finding, under the circumstances of this family, fraud or undue influence practiced upon the father by Mrs. Bennett. As stated, the father was already estranged from Mrs. Arbecam, believing that she had wrongly charged his son, George, with immoral practices. The testimony fails to show that Mrs. Bennett was responsible for this belief, but even if the inference might be drawn from the evidence that she had so informed her father, the surrogate ruled that she had nothing to do with it. Mr. Bancroft never became reconciled to Mrs. Arbecam, saying that he would never forgive her. Four or five years afterwards, and while apparently his feeling toward this daughter remained the same, Mrs. Bennett is said to have told her father that

her sister was fast; and to have threatened revenge, by seeing that nothing was left her by will. Can this be said to have influenced the old gentleman against his daughter when it appears that for other reasons he had years before turned her from his home? Did this falsehood of Mrs. Bennett move him to disinherit his daughter or was it the unfounded belief in her statements about George for which Mrs. Bennett was not responsible? That the testator made his will under the influence of the episodes of 1910 for which he believed Mrs. Arbecam to have wronged George is as likely and as reasonable as that he was in any way influenced by Mrs. Bennett's statement to him that her sister was fast. To say that these later statements induced him to disinherit Mrs. Arbecam when he had already *acted* against her upon information, which he believed, not traceable to Mrs. Bennett, is mere speculation.

Upon another hearing the contestant may be able to connect her sister with this apparently unfounded belief of the father regarding the charges against George or with other conduct showing that Mrs. Bennett did in fact exercise influence against her, but upon the evidence as above outlined, the jury could not break the will. In reversing the judgments below, we, therefore, grant the contestant a new trial.

The judgments should be reversed and a new trial ordered, with costs to abide event.

HISCOCK, Ch. J., CHASE, HOGAN, CARDOZO, POUND and ELKUS, JJ., concur.

Judgments reversed, etc.