Matter of the Contested Probate of the Last Will and Testament of EUGENE TYMESON, Deceased.

(Surrogate's Court, Westchester County, March, 1921.)

Verdict — when the court may direct a verdict upon a contested probate — Surrogates' Courts — trial — evidence — wills.

It is only when a verdict rendered upon a contested probate must be set aside as unsupported by the evidence that the court may direct a verdict.

Where a will was executed under the supervision of a lawyer, the presumption is that the formalities of the Statute of Wills were complied with, and when the proof is ample to indicate due execution that issue may be taken from the jury and the surrogate may direct a verdict in favor of the will on that issue.

Surrogate's Court, Westchester County, March, 1921.    [Vol. 114.

Where the contestants failed to give evidence of direct pressure upon the testator or produce evidence which will support a verdict that the will was a product of undue influence, coercion, duress, fraud or restraint of any kind or character, the consideration of such issues will be withdrawn from the jury and a verdict directed in favor of the will.

Where the only inference to be drawn from all the evidence, by reasonably minded men, is that the testator when he made his will possessed the mental capacity required by law, no question of fact is left for the jury, and as it would have been the duty of the court to set aside a verdict against the will, as against the evidence, a verdict in favor of the will upon that issue will be directed.

DECISION on motion to direct a verdict.

Mott & McCreedy (Clarence Alexander, of counsel), for proponent.

Thomas J. O'Neill (J. Ambrose Goodwin, of counsel), for contestants.

SLATER, S.   At the conclusion of the trial of this cause, the attorney for the proponent has made a motion that the court take the issues, as framed by an order of this court, from the jury and direct a verdict upon all the issues.

The burden at this time belongs alone to the surrogate.   It is *only when a verdict* MUST *be set aside,* as unsupported by the evidence, and *not when it* MAY *be set aside* for that reason, when a verdict may be directed.   The issues framed in this contest relate to the execution of the will of Eugene Tymeson; the want of testamentary capacity of the decedent; and undue influence exerted over the decedent.   The will was executed under the supervision of a lawyer, and this alone affords a strong presumption that it was executed in compliance with the formal requirements of the statute.   *Matter of Cottrell,* 95 N. Y. 329, 339; *Matter of Nelson,* 141 id. 152.   In my judgment, there

is ample proof upon the record to indicate due execution of the will by the formalities required under the law of wills of the state, and I take from the consideration of the jury this issue, and I direct a verdict upon this contention of the contestants in favor of the will.

*Another issue* is that of undue influence. Undue influence is an affirmative assault upon the validity of a will, and there must appear a moral coercion destructive of free agency. The elements of undue influence are motive, opportunity, and the act itself, and the exercise of the act upon the testator must be at the very testamentary act. Mere opportunity to exercise undue influence, standing alone, is not enough. *Cudney* v. *Cudney,* 68 N. Y. 148. No evidence is offered that it was the work of the chief beneficiary of the will. A will cannot be avoided because of the influence of another, unless it appears that the influence exerted was so potent at the time the will was made as to take away and overcome the power of the testator at that time to act freely and upon his own volition. The evidence adduced in support of undue influence fails to meet the requirements as laid down in *Matter of Caffrey,* 95 Misc. Rep. 466; *Matter of Powers,* 176 App. Div. 455; *Matter of Fleischmann,* 176 id. 785; *Matter of Ruef,* 180 id. 203; affd., 223 N. Y. 582; *Burke* v. *Burke,* 193 App. Div. 801; *Matter of Heaton,* 224 N. Y. 22; *Matter of Dunn,* 184 App. Div. 386.

The contestants have failed to show evidence of direct pressure upon the testator, or produce evidence which will support a verdict that the will was the *product* of undue influence, or coercion, or duress, or fraud, or force, or restraint of any kind or character. The burden of proof of undue influence is always upon the contestants, and never shifts. *Matter of Kindberg,* 207 N. Y. 220. The contestants have failed to sustain this burden. Testamentary gifts to paramours, or

**646**      MATTER OF TYMESON.

strangers to the blood do not *per se* create an invalid will, nor necessarily pre-suppose undue influence. *Scott* v. *Barker,* 129 App. Div. 241; *Matter of Eddy,* 41 Misc. Rep. 283; *Heyzer* v. *Morris,* 110 App. Div. 313; *Matter of Mondorf,* 110 N. Y. 450; *Matter of Powers, supra; Matter of Fleischmann, supra; Matter of Snelling,* 136 N. Y. 516; *Hagan* v. *Sone,* 174 id. 317, 323.

Influence which exists from affection, or desire to gratify, is not undue influence sufficient to invalidate a will.

I take from the consideration of the jury the issues of restraint and undue influence, and I direct a verdict upon these issues raised by the contestants in favor of the will.

*Another and vital issue* in this case is that of mental capacity of the testator. In order to make a proper will, it is necessary that the testator should have testamentary capacity. It is essential that the testator have sufficient mental capacity to comprehend perfectly the condition of his property as relates to the persons who were, or ought, or might have been the objects of his bounty, and the scope and bearing of the provisions of his will. He must, in the language of the law, have sufficient active memory to collect in his mind, without prompting, the business to be transacted. The test is: Was testator's mind capable of understanding the nature and disposition of his property, and his relations with his relatives? If the testator has this, upon the *date he made his will,* he is a person of sound mind and memory, within the meaning and intent of the Statute of Wills. Code Civ. Pro. § 2614; *Delafield* v. *Parish,* 25 N. Y. 9; *Matter of Lawrence,* 48 App. Div. 83; *Matter of Snelling,* 136 N. Y. 515. Less mental faculty is required to execute a will than to enter into any other legal instrument.

*Matter of Moyer,* 97 Misc. Rep. 512, 531. In a case free from undue influence, not a very high degree of mentality is required to make a valid will. *Matter of Strong,* 179 App. Div. 539.

The testator's property was his own. Under our system of law, he had the power to do with it as he chose. The law does not constrain a testator to be just, or to recognize natural claims upon his bounty. So long as the will is his own and not another's, it must stand, if he is *competent to make it. Dobie* v. *Armstrong,* 160 N. Y. 584, 593; *Matter of Huber,* 103 Misc. Rep. 599, 611, 612; *Smith* v. *Keller,* 205 N. Y. 39.

The holding of delusions does not in and of itself constitute testamentary incapacity. There may co-exist delusion and a disposing mind. A delusion affects testamentary capacity *only* when it enters into and controls in some degree its exercise, and to invalidate a will, it must be shown that the will was the result of the delusion. *Heaton's Will,* 224 N. Y. 22, 29.

There is no presumption against the validity of a will because the will was made by a person of advanced years and in enfeebled condition of body and mind. Attempted suicide does not of itself raise a presumption of lack of mental capacity. Evidence produced by contestants of moral depravity, or moral insanity does not constitute legal incapacity or legal insanity. It may be classed as relaxation to mental effort. Proof of moral depravity does not establish a lack of intellectual ability. The law does not require any particular grade of moral rectitude as an element of testamentary capacity. *Matter of Forman,* 54 Barb. 274; *Matter of Jones,* 5 Misc. Rep. 199; 1 Jarman Wills, 75. Ill health is not of itself evidence of want of testamentary capacity. Eccentricity, even gross eccentricity, slovenliness in dress, peculiarities of speech and manner are not facts sufficient to disqualify a person from

making a valid will. *Matter of Schober,* 90 Misc. Rep. 230; *Matter of Cutter,* 175 App. Div. 647; retrial, 100 Misc. Rep. 130.

Where upon consideration of the entire evidence of the case, *reasonable men might draw different inferences, then,* and *only then,* a question of fact is presented, which the court should submit to the jury. Whether this issue of mental capacity should be submitted to the jury is to be further tested as follows: If in the opinion of the surrogate he should have to set aside the verdict of the jury, as against the weight of evidence, if given against the will, then he should not submit the issue to the jury.

Proof of the evidence of undue influence always presupposes that mental capacity exists. *Matter of Dunn,* 184 App. Div. 386. Proof of the ability to perform, in a satisfactory manner, a person's usual toil, pre-supposes that mental capacity exists, sufficient to make a valid will, even though that person suffers from progressive arterio-scelerosis.

The testamentary capacity of the decedent, evidenced by the exercise of his sensitive creative intellect, and recognized genius; his rationality in the original conception of ideas, resulting in the almost human functioning of mechanical inventions, automatically performing intricate tasks, in tireless repetition, being useful, valuable, and absorbed in a great manufacturing plant, prior to, near, and subsequent to the date of the will; and as further evidenced by his habits, acts and speech, all testified to by the witnesses for the will, oppose, and are in contradiction to the existence of arterio-sclerotic insanity on October 4, 1918.

These two opposite forces and conditions — one the vital organism which propels normally the human mind — the other the destructive condition which scle-

rotic insanity causes — *do not* exist in the *same brain,* at the *same time.* Sclerotic insanity may exist in an individual, and destroy the mental power to develop those things which the decedent created. But, the mental labor performed by the decedent as stated above, *disproves* and confutes the testimony that sclerotic insanity existed in his case on October 4, 1918.

Testamentary capacity and sound mind as defined by the law, not medical soundness of mind, governs regarding wills. The legal test of sanity is that the acts and conduct of the person whose sanity is under investigation shall correspond with the acts and conduct of the *person himself* at the time when he is proved to have been in health and sound mind. The eccentricities and conduct of the testator at the time he made his will were normal to the man himself for over thirty-five years, according to the testimony.

In my opinion, different inferences *cannot fairly be drawn* by reasonable men from the character of the evidence offered on this trial, upon the issue of the mental capacity of the testator. The only inference to be drawn by reasonably minded men from all the evidence is *that the testator possessed the mental capacity required by law* to make a valid will on October 4, 1918. In my judgment, no question of fact is presented for the jury.

Consequently, evidence which is not sufficient to support a verdict is in the eye of the law no evidence, and, when it is said that there is no evidence to go to a jury, it is not meant literally '' none,'' but that there is none that ought reasonably to satisfy a jury that the fact sought to be proved is established. *Matter of Case,* 214 N. Y. 199; *Getty* v. *Williams Silver Co.,* 221 id. 34, 39; *Matter of Huber,* 103 Misc. Rep. 608; *Matter of Dorsey,* 94 id. 566, 577.

*Matter of Ruef,* 180 App. Div. 203, 207; affd., 223

Surrogate's Court, Westchester County, March, 1921.    [Vol. 114.

N. Y. 582, is the law of this department and the state upon this question. The court held: "If the evidence is not sufficient to support a verdict, it is ' in the eye of the law no evidence,' and should not be submitted to a jury," quoting *Matter of Case, supra.* This accords with the trend of recent decisions. The following cases support this principle and the test above indicated; *Matter of Cutter,* 100 Misc. Rep. 130; *Matter of Kennedy,* 106 id. 216; *Matter of Hall,* 193 App. Div. 362; *Matter of Woods,* 189 id. 324; *Ivison* v. *Ivison,* 80 id. 599; *Burke* v. *Burke,* 193 id. 801; *Lester* v. *Lester,* 178 id. 438; *Matter of Brand,* 185 id. 134; affd., 227 N. Y. 630; *Matter of Fleischmann,* 176 App. Div. 785; *Matter of Dunn,* 184 id. 386; *Matter of Kennedy,* 186 id. 19, 190 id. 896; affd., 229 N. Y. 567; *Matter of Goodheart,* 173 App. Div. 256; *Matter of Sullivan,* 229 N. Y. 440; *King's Will,* 172 N. Y. Supp. 870; *Dobie* v. *Armstrong,* 160 N. Y. 584; *Matter of McGill,* 229 id. 405, 410; *Estate of O'Brien,* N. Y. L. J., Dec. 29, 1920.

Had I left the matter to the jury and had they found against the will, the verdict must have been set aside, in my judgment, as against the weight of evidence. The burden of proof of mental capacity, which rests upon the proponent, has been sustained. After mature deliberation, I feel it my duty and judicial obligation to refrain from submitting this issue to the jury. I direct a verdict upon this issue raised by the contestants in favor of the will.

Probate decreed.