Matter of the Probate of the Last Will and Testa-
ment of MATILDA E. BURNHAM, Deceased.

(Surrogate's Court, Westchester County, June, 1921.)

**Wills — testamentary capacity — verdict of jury that testatrix
was of unsound mind and lacked testamentary capacity sus-
tained.**

A competent testator must have strength and clearness of
mind and memory sufficient to know in general, without prompt-
ing, the nature and extent of the property of which he is about

to dispose, the nature of the act which he is about to perform, and the names and identity of the persons who are the proper objects of his bounty and his relation to them.

Testatrix left her surviving as her sole next of kin a son forty-four years old, an incompetent, a victim of epilepsy since he was eleven years of age and who at present is an inmate of a state hospital. When she was about seventy-two years of age and suffering from cancer, Bright's disease, kidney trouble and fistula she was removed to a hospital in an exhausted condition where she died early the next morning. On the evening of the day before she went to the hospital she made a will by which she bequeathed all of her property, worth about $150,000, to strangers of the blood, to friends and to charities, and within twenty minutes thereafter became bluish. Upon the contested probate of the alleged will brought by the disinherited son, there was introduced in evidence a former will made by decedent about eighteen months before her death while apparently she was in good health, under the terms of which, after certain legacies to much the same persons mentioned in the instrument sought to be probated, the balance of the estate was given to charity. It was conceded, however, that under the former will, decedent died intestate as to about $30,000, which passed to her son because the gift to charity was in violation of section 17 of the Decedent Estate Law. The new alleged will, by language involved and complex, diverts from the son the interest he would take by force of the Statute of Distributions and by a method not calculated to be altogether clear until a final accounting, adds the $30,000 to legacies already given, by definite and fixed amounts, but by a method sure in diverting from the son that which fell to him by reason of his mother's intestacy. By special verdict the jury found that at the execution of the instrument offered for probate, the testatrix was of unsound mind and lacked testamentary capacity, but that the execution of said instrument was not procured through restraint, fraud or undue influence. *Held*, that the verdict was not so far against the weight of evidence as to indicate sympathy, passion or prejudice as its procuring cause, and therefore proponent's motion to set aside the verdict upon the issue of mental capacity will be denied and probate of the instrument refused because of the jury's finding that testatrix was mentally incapable of executing the instrument.

The finding of the jury upon the other issues submitted was consistent with the finding upon the issue of testamentary

capacity, and contestant's motion to set aside the verdict upon said other issues, on the ground that it was against the evidence and the weight of evidence and contrary to law, will also be denied.

PROCEEDING upon the probate of a will.

Herman A. Schupp (Martin Conboy and Joseph F. Collins, of counsel), for proponents.

Frederick P. Close and Edward S. Slater (Lee Parsons Davis, of counsel), for special guardians and contestants.

SLATER, S.   Upon the trial, the issues numbers 1, 2 and 3, all relating to the execution of the will, were taken from the jury and a verdict directed by the court in favor of the will.   The issue number 4 relates to testamentary capacity, and the issues numbers 5 and 6 relate to restraint, fraud and undue influence. The jury found, in answer to the specific· question number 4 that, at the time of the execution of the will, the decedent was of unsound mind and did not possess testamentary capacity, and, as to the specific questions numbers 5 and 6, that the will was not procured through restraint, or fraud, or undue influence.

The proponents move to set aside the specific verdict of the jury upon the issue of mental capacity. The contestant moves to set aside the specific verdict of the jury upon the issues of restraint, fraud and undue influence.   These motions are made because it is claimed that the verdict of the jury upon these issues is against the evidence and the weight of evidence and contrary to law.

The application of the tests, applied by this court in *Matter of Tymeson*, 114 Misc. Rep. 643, when

applied in the instant case, compelled the court to submit the issues to the jury. The law now gives the determination of questions of fact in a case like this to a jury for their verdict, and the court is not justified in withdrawing such questions from the consideration of a jury, if upon a consideration of the entire evidence, reasonable men might draw different inferences. *Tousey* v. *Hastings,* 194 N. Y. 79; *Matter of Case,* 214 id. 199. The correct rule applicable to this case is stated in *Hagan* v. *Sone,* 174 N. Y. 317, 323, as follows: " The plaintiff's proof might not have satisfied the jury that the deceased was either incompetent to make a will or subjected to any undue influence, but there was enough of it to require us to hold that the jury was the branch of the court that the law required to pass upon it. Questions of fact arising in an action to determine the validity of a will are no different in this respect from questions of fact in any other case. When evidence is given of such a character that different inferences may fairly and reasonably be drawn from it, the fact must be determined by the jury. The good sense of the jury, when aided by proper instructions from the court, is the best and, indeed, the only protection that litigants ordinarily have in the determination of issues of fact, depending upon conflicting evidence, even when such issues arise in actions to determine the validity of the most important testamentary instruments." *Matter of Strong,* 179 App. Div. 547.

A mere scintilla of evidence is not sufficient to overcome the presumption of the sanity of the party executing the will and the verdict of the jury must be considered and its effect determined under the same rules that govern the court in the review of the verdict of the jury in other cases where by the constitution or by the statute the parties have the

right to a jury trial. *Matter of Eno,* 196 App. Div. 131; *Matter of Spang,* 197 id. 310; N. Y. L. J., June 13, 1921.

In the instant case the conflict of evidence is clear and warranted the submission of the issues to the jury as sole judge of the facts. *Matter of Barney,* 185 App. Div. 782; *Matter of Hurley,* 189 id. 664; *Matter of Eno, supra; Matter of Donohue,* 115 Misc. Rep. 586.

Mrs. Burnham was about seventy-two years of age. She left as her next of kin an only child, a son aged forty-four years, an incompetent, a victim from epilepsy from about the age of eleven years, who is the contestant herein. This son is now an inmate of the State Hospital at Poughkeepsie, N. Y. The will bequeathes practically $150,000 of property, all to strangers of the blood, to friends and to charity; disregarding all claims of nature. The son was disinherited. The will was what might be termed a death-bed will. *Matter of Seagrist,* 1 App. Div. 615, 620. It was an unnatural one and contrary to natural duty, or affection. There was offered in evidence a prior will, made about eighteen months before the death of the decedent, while she apparently was in good health, under the terms of which prior will, after giving certain legacies to much the same people as mentioned in the latter will, she disposed of the balance of the estate to charity. The present will was made while the testatrix was on her death-bed, and weakened by disease. So far as the contestant is concerned, the vital change made in the present will from the former one is found in the 7th paragraph. It was conceded by counsel on both sides that under the terms of the former will, the decedent died intestate as to about $30,000 which passed to the incompetent son, because the gift to charity violated sec-

tion 17 of the Decedent Estate Law.  The new and added portion to the 7th paragraph as set forth in the present will is involved and complex.  It gives the residue which would have passed to the son under the former will to the legatees in the 3d paragraph of the present will, in addition to their legacies therein stated, in proportion to the amounts given. This additional gift is indirect and confusing to even a normal mind.  The new paragraph diverts from the testatrix's son the interest he would take by force of the Statute of Distribution, under the former will.  The new and added clause is as follows:  '' In the event, however, it shall appear that the sum which might be payable to the Library and Reading Room of the Village of Port Chester, under the provisions of this paragraph, would be, or represent more than one-half part of my estate after the payment of my debts, the surplus over said one-half part, I direct shall be added to the legacies provided for in the several subdivisions of paragraph third of this will, and that all of said legacies in said paragraph then shall be increased proportionately.''

It adds the $30,000 to the legacies already given by definite and fixed amounts, by a method not calculated to be altogether clear until a final accounting, but by a method sure in diverting from the son that which fell to him by reason of the mother's intestacy of part of her estate.

Therefore, the only question for my determination is whether the verdict is against the weight of evidence and so far against the weight of evidence as to indicate sympathy, passion, or prejudice as the procuring cause of the verdict.  Is there enough evidence to support the finding that the decedent was not of sound mind when she executed the paper propounded as her last will and testament?  *Matter of*

*Ruef,* 180 App. Div. 203; affd., 223 N. Y. 582; *Matter of Case,* 214 id. 199. While the proponents claim there is some evidence in the case to establish the mental capacity of the decedent, there is abundant evidence to the contrary. There is ample evidence that the decedent was a loving mother and had the usual natural affection for an afflicted child. She with infinite patience waited for the day when the boy should come home to her from the asylum cured from his mental ailment.

We are now confronted with the important inquiry as to the decedent's mental condition on the evening in question. Was she in all respects competent to make a will? Code Civ. Pro. § 2614. The decedent had been suffering from a prolonged illness and had been under the care of a physician and nurse since June, 1920. Mrs. Burnham died November 6, 1920, at about four o'clock A. M. at the United Hospital in Port Chester, where she had been removed from her home at about ten o'clock the evening before. The will was executed at about, or a little after, eight o'clock on the evening of November 5, 1920, at her home. She was a sufferer from cancer, Bright's disease, kidney trouble and fistula. The daily charts of the attending nurse from September nineteenth to and including the time of her death are in evidence in the case and are highly important. These charts indicate her physical condition during all this time and show conclusively that her condition was rapidly becoming worse. The nurse fully explained them and told of the patient's general physical condition. The decedent was informed about October first by her physician that she had cancer and, from that time, her condition kept getting worse. We now approach the evidence bearing on the mental condition of the deceased at the particular time when she executed

Misc.]    Surrogate's Court, Westchester County, June, 1921.

the will.  On November third her illness became desperate, says the nurse.  The deceased was in bed.  She was gradually growing weaker.  She had frequent vomiting spells, was cold and had a clammy perspiration.  On November fourth, the intestines blockaded for good.  *Matter of Strong,* 179 App. Div. 539, 545.  The nurse testified that on November fifth she was in an exhausted condition.  On the afternoon of November fifth at two P. M., she commenced to vomit fecal matter.  She vomited during that day at intervals of about one hour and had a vomiting spell at about seven-thirty P. M.— thirty minutes before the will was executed.  During the day of November fifth, her heart was weak and she was dizzy in the head.  Within twenty minutes after the signing of the will she became bluish.  At seven-thirty o'clock, she asked for Mr. Schupp, the attorney.  He arrived in about fifteen minutes.  The prepared will was in his possession.  There is testimony that the telephone call was "Aunty is asking for you.  Will you come around as soon as you can?"  He apparently had the same paper Mrs. Allen referred to in her testimony, when she swore Mrs. Burnham had said to her a week before:  "Herman has been here and wants me to sign some papers and I told him I would go to his office some time."  In this manner she had refused to execute the paper in October at a time when Mrs. Allen said she was rational.  The evidence clearly shows that at the time the attorney arrived, she was in a critical condition.  She was *in extremis.*

There is a conflict in the testimony of the nurse given upon the trial, and her prior testimony given in December, 1920, before the surrogate in her examination as a witness to the will.  Code Civ. Pro. § 2611.  It relates to an important circumstance

Surrogate's Court, Westchester County, June, 1921.    [Vol. 115.

prior to the time of the execution of the will. Did
Mrs. Burnham, or did Mr. Schupp, her attorney, ask
the nurse to send for a neighbor to act as a witness?
Her testimony upon this point is at variance and con-
tradictory in the two examinations.

The nurse testified that, when the will was signed,
the decedent was in a dying condition. The decedent
had been informed of her general condition by her
physician. The nurse understood her critical condi-
tion. The attorney had been informed of it, but, in
the face of such information, the nurse and the other
witness to the will testified that, after the will had
been executed, the attorney stood at the foot of the
bed with the will in his hand, and he turned to her
(the decedent) and he said: " ' This is your last
will and testament.' She said: ' Yes.' He said:
' You are not entirely satisfied with this will.' She
said: ' No.' He said: ' You are going to make
another will when you get better, are you not? ' She
said: 'Yes.' "

It was testified that at six o'clock the deceased
said she realized " her time had come," but at the
time of the execution of the will she answered " No "
and " Yes " to questions by the attorney as to
whether she was entirely satisfied with the will and
would make another one when she got better. There
was no discussion by her and such categorical replies
are indeed different from the facts in *Pettit* v. *Pettit,
No. 1,* 149 App. Div. 485, 490.

On October 29, 1920, one week before she executed
the paper writing, she told Mrs. Allen, a friend, a wit-
ness called by the proponent, that " Herman has
been here and wants me to sign some papers and I
told him I would go to his office some time." The
paper writing was apparently prepared in October,
the word " October " was typewritten in and later

marked out. Therefore, there were times during which she had no intention of making a will. There is no proof of any direction to make a will and the will was not read to or by the decedent in the presence of the witnesses. There is no proof that the decedent knew its contents. Mr. Schupp, the attorney, was in her sick room alone with her for fifteen minutes preceding the execution of the will. Her answers to the questions attending the formalities of the execution of the will were categorical. Miss Sullivan says she asked for her glasses, which request was from force of habit and would not necessarily indicate the exercise of mental power.

The will was executed a few hours before the death of Matilda E. Burnham. She was confessedly at that time in a very critical condition. During the day she was exhausted and suffered many vomiting spells of fecal matter, there was a stoppage of the bowels due to a disease which was cancerous in its nature and which affected her whole system. See *Matter of Spang, supra.*

The real test of mental capacity has been agreed upon by the great weight of authorities as follows: The testator must have strength and clearness of mind and memory sufficient to know in general without prompting the nature and extent of the property of which he is about to dispose, the nature of the act which he is about to perform, and the names and identity of the persons who are the proper objects of his bounty, and his relation toward them. *Delafield* v. *Parish,* 25 N. Y. 9, 35.

In the instant case, was Mrs. Burnham capable mentally of knowing and remembering who were her relations, or her relationship or responsibility to them? Was she mentally capable of forming a decision as to the disposition of her property, and of

Surrogate's Court, Westchester County, June, 1921.     [Vol. 115.

recollecting her decision throughout the disposition of it? At the time of the testamentary disposition, was the natural intelligence and memory and judgment perverted by disease? Was she in a situation, mentally, to comprehend her relation to this afflicted and helpless son? Was she of disposing mind and memory? Could she comprehend the indirect method of adding to the legacies given in the 3d paragraph of the paper writing which took from her son what was his by force of law?

The jury considered these questions and decided that, when she executed the will, she was mentally incapable of knowing the extent and value of her property, of having a fixed wish and a judgment in the disposition of her property, that disease had so impoverished her memory that she could not collect in her mind without prompting the particulars or elements of the business to be transacted, and to hold them in her mind a sufficient length of time to perceive, at least, their obvious relations to each other. *Matter of Snelling,* 136 N. Y. 515. They were of the opinion that she did not fully understand the provisions of the paper by reason of her physical condition at the time she executed it.

The scene in the sick room does not indicate to the court that she had the clearness of mind, or comprehended the nature of the act which she then had performed, or appreciated its bearings, or knew the natural objects of her bounty, or had an intelligent grasp of affairs, such as the law demands from a person mentally capable to make a last will and testament. The answers to the questions asked her indicate a weakened mind. A mind incapable of understanding the nature of her act and its consequences. *Matter of Spang, supra.* It is significant of her physical condition at the time she executed the will.

The will being an unnatural one and inconsistent with the duties and obligations of the testatrix, a mother, to the son, it imposed upon the proponents the duty of giving some reasonable explanation of its unnatural character, or at least of showing it was not the result of mental incapacity. In my opinion, they have not done this.

The proponent did not call any expert medical witnesses. The two experts called for the contestant, admittedly experts in mental disorders, in answer to the hypothetical question involving the facts, being largely based upon the charts and the testimony of the nurse, and the other witness to the will, and not based upon an erroneous hypothesis (*Phillips* v. *Phillips,* 77 App. Div. 113, 121; affd., 179 N. Y. 585), testified that the decedent was incapable of understanding the nature of her acts and their consequences, and in effect that she was mentally incapable to make a will. The material witnesses in the case were the nurse, Miss Sullivan, the other witness to the will, and Mrs. Allen, the personal friend of the decedent. The other witnesses for the proponent gave immaterial testimony upon the issue of testamentary capacity, because none of the incidents which they narrated were at or nearer than one week before the execution of the will. They were more or less remote from the time of the execution of the will. They testified that she was rational. Two witnesses failed to state conversations upon which to base an impression of rationality. The family physician saw her at six o'clock P. M. of the day the will was executed and testified she was rational.

Such motions as these are addressed to the sound discretion of the court, involving the inquiry whether substantial justice has been done. *Barrett* v. *Third Avenue R. R. Company,* 45 N. Y. 628. Where the

evidence is so far contrary to the jury's finding as to indicate the jury must have been influenced by passion, prejudice, partiality or mistake, or that they failed to give proper consideration to the evidence through misapprehension as to its effect, and where it is clear to the court that injustice has been done, it is the duty of the court to set aside the verdict. *Dwight* v. *Germania Life Ins. Co.,* 103 N. Y. 341, 359; *Berkowitz* v. *Consolidated Gas Co.,* 134 App. Div. 389, 391; *Perham* v. *Cottle,* 98 Misc. Rep. 48, 61; affd., 178 App. Div. 949.

In my judgment, the jury's verdict on the question of testamentary capacity is amply justified. It clearly cannot be said the verdict is without evidence to support it, nor can it be said that the verdict indicates passion or prejudice or bias on the part of the jury, and there is no sign that their verdict was affected by other than fair and rational considerations. Surely no injustice has been done.

The proponents have failed to sustain the burden imposed upon them under the decisions and the Code. He who presents a will asserts that the testator was qualified by the statute to make it. *Rollwagen* v. *Rollwagen,* 63 N. Y. 504, 517; *Dobie* v. *Armstrong,* 160 id. 584; *Matter of Kindberg,* 207 id. 220; *Matter of Schreiber,* 112 App. Div. 495; *Matter of Smith,* 180 id. 669, 674; *Matter of King,* 89 Misc. Rep. 638, 649; Code Civ Pro., § 2614. The contestant contends that the verdict upon this issue had ample support in the evidence and it should not be disturbed by the court upon this motion. The court has no right to substitute its opinion for the opinion of the jury upon questions of fact in conflict unless it can be shown that the verdict was rendered by passion, prejudice, mistake or bias, or not supported by evidence. I do not disagree with the jury upon their finding upon the

issue of testamentary capacity. I feel confident that the verdict as to mental capacity of the decedent is sound, is justified, and is founded upon evidence to support it, and, therefore, should not be disturbed. If there was a retrial, the result, in my opinion, would be the same. This probability must be taken into consideration by the court. *Matter of Spang, supra; Matter of Donohue, supra.* The motion of the proponent is denied.

As to the motion of the contestant. The contestant charged that restraint and fraud and undue influence were exerted upon the decedent and that the verdict upon the issues numbers 5 and 6 is against the evidence and the weight of evidence.

The jury's verdict on this issue is consistent with their verdict upon the issue of testamentary capacity. Should I sustain the contestant's motion, it would be to violate the rule laid down by Mr. Justice Woodward in *Matter of Dunn,* 184 App. Div. 386, 396, wherein he recites that you cannot unduly influence an incapable mind. An allegation of undue influence is inconsistent with an allegation of insanity. *Kinne v. Johnson,* 60 Barb. 69; *Matter of Hock,* 74 Misc. Rep. 15, 29; *Matter of Brand,* 185 App. Div. 134; *Estate of Terence O'Brien,* N. Y. L. J., Dec. 29, 1920, Surrogate Foley. Undue influence presupposes someone who in law may be influenced. Whether there may be different degrees of *compos mentis* is questionable. The theory is that the influence must be of a stronger mind upon a weaker sound mental condition. Thus, in the instant case consistency will not, indeed, be sacrificed. The jury having found by their verdict that the decedent did not have a legal mind and that Mrs. Burnham was not unduly influenced, the court has no thought to disturb their ver-

Surrogate's Court, Westchester County, June, 1921.    [Vol. 115.

dict. Consequently, I deny the motion of the contestant.

Submit decree refusing probate to the last will and testament propounded because of the verdict of the jury finding that the decedent was mentally incapable of executing the propounded paper writing.

Decreed accordingly.