In the Matter of Proving the Last Will and Testament of AMOS F. ENO, Deceased, as a Will of Real and Personal Property.

Surrogate's Court, New York County, February, 1922.

Wills — testamentary capacity — reversal on appeal of decree based on verdict in favor of contestants — when binding on second trial in which no new evidence is adduced by contestants — verdict in favor of contestants set aside.

In a previous trial the court directed a verdict in favor of proponent upon the issues of the due execution of the will and of undue influence. The question of testamentary capacity was submitted to the jury and their verdict was against the will. Upon a unanimous reversal by the Appellate Division of the Supreme Court of the decree entered upon such verdict, as against the weight of evidence, a majority of that court directed that the issue of testamentary capacity be again submitted to a jury. Upon the retrial the testimony was substantially the same as upon the former trial, the only outstanding change in the entire case being testimony highly favorable to the proponent. The jury found that the testator was not of sound mind and memory nor capable of making a valid testamentary disposition of his property on the day the will was executed. *Held*, that upon a motion to set aside the verdict as against the evidence, the weight of the evidence and as contrary to law, the said determination of the Appellate Division was controlling and accordingly the motion must be granted.

PROCEEDING to probate a will.

*Clarence J. Shearn*, of counsel for proponents.

*Henry DeForest Baldwin* (*Wallace Macfarlane* and *Francis Woodbridge*, of counsel), for executors.

*John B. Pine*, for Columbia University.

*DeForest Brothers*, for Metropolitan Museum of Art.

*Gould & Wilkie*, for General Society of Mechanics and Tradesmen.

*Leslie J. Tompkins*, for New York University.

MATTER OF AMOS F. ENO.  **187**

Misc. 186]    Surrogate's Court, New York County, February, 1922.

*Cadwalader, Wickersham & Taft,* for New York Association for Improving the Condition of the Poor.

*Evarts, Choate & Sherman,* for American Museum of Natural History.

*Stewart & Shearer,* for New York Public Library.

*Daniel J. Mooney,* special guardian for Antoinette W. E. Graves et al.

*Max D. Steuer,* of counsel for contestants.

*Sullivan & Cromwell,* for Antoinette E. Wood et al.

*Perkins & Train,* for Henry Lane Eno.

*Simpson, Thacher & Bartlett,* for William P. Eno.

*J. Robert Rubin,* special guardian for Gifford Pinchot, 2d, et al.

FOLEY, S.   In this contested probate proceeding, the jury in answer to the single question submitted, found that the testator was not of sound mind and memory nor capable of making a valid testamentary disposition of his real and personal property at the time the will was executed on the 18th day of June, 1915.   The proponents thereupon moved to set aside the verdict.   The motion is granted on the ground that the verdict is against the evidence, against the weight of the evidence and contrary to law.

Upon the previous trial of this contest a verdict was directed in favor of the proponents on the questions of the execution of the will and of undue influence.   The question of testamentary capacity was submitted to the jury and their verdict was against the will. An appeal was taken by the proponents and the Appellate Division of the Supreme Court unanimously reversed the decree based upon that verdict as against the weight of the evidence.   A majority of that court directed that the issue of testamentary capacity be again submitted to a jury.   A minority dissented and held that the further question of undue influence should also be submitted.

A restatement of the facts and circumstances is unnecessary here, in view of the comprehensive and accurate recital of Mr. Eno's life history and the making of the will contained in the opinion of Mr. Justice Page.   *Matter of Eno,* 196 App. Div. 131. After a careful analysis, I am convinced that upon the retrial before me, the testimony was substantially the same as upon the former trial.   Over one hundred and thirty-five witnesses testified for both sides during the trial.   For the contestants, only four new witnesses were called out of a total of about fifty.   These witnesses were Dr. Van Slyke, Mrs. Swett, Mrs. Hayes and the Saratoga hackman, Hines.   It is not too much to say that these witnesses

did not add a single new fact of any weight. Mrs. Hayes had not seen the testator for a period of three years before the execution of the will. The testimony of Dr. Van Slyke and Mrs. Swett was inconsequential and the testimony of Hines was impeached by his criminal record. The only outstanding change in the entire case was the testimony of Dr. Robert H. Wylie, who had been called upon both trials by the contestants. He had been the personal physician of Mr. Eno for twenty-five years. Dr. Wylie stated that he did not believe Mr. Eno to be insane in the early part of January, 1915, five months before the execution of the will. This testimony was highly favorable to the proponents. With the exception of these changes, the voluminous record of five thousand pages of minutes as to the life, conduct, habits and declarations of the decedent was practically identical with the former record on appeal.

Under these circumstances, it is clear that the determination of the Appellate Division that the former verdict was against the weight of the evidence, is controlling upon the surrogate in the disposition of this motion. It required five years between the entry of the former decree and the determination of the appeal. The ends of justice and respect for its administration require that this delay and the incidental expense should not be repeated. But entirely aside from the determination of the Appellate Division, I am of the opinion that this verdict must be set aside. The proponents might well rest upon the documentary evidence consisting of Mr. Eno's letters and diaries. No case can be found in the law reports which contains such an abundance of evidence in the decedent's handwriting recording his daily conduct and the operations of his mind. These writings of Mr. Eno show a mind possessed of all its faculties and one remarkable for a man of seventy-eight years of age. Outside of a few errors, which any man might make, they do not disclose any indications of unsoundness of mind. Mr. Eno possessed before and after the making of the will keen ability to transact business, and to attend to the management of his large investments in personalty and of his ninety parcels of real estate. His diary entries evidence an excellent memory and knowledge of current events. His letters to his office employees, his relations and friends, and to other persons are clear, responsive, shrewd and intelligent. .

The law requires that a testator must have strength and clearness of mind and memory, sufficient to know the nature and amount of his property in general; the names and identity of those having natural claims upon his bounty, and his relation towards them, and the nature of the act he is about to perform. The memoranda made by Mr. Eno, in his diary of 1915, while he was preparing the

MATTER OF AMOS F. ENO. 189

Misc. 186]     Surrogate's Court, New York County, February, 1922.

will, indicate the possession of these elements of testamentary capacity. He listed substantially the properties he possessed, and their values. He mentioned in these entries all the persons who were the proper objects of his bounty. He remembered all his near relations as beneficiaries in his will. His appreciation of the scope and nature of the will is evidenced in these preliminary notes and is substantiated by the testimony of witnesses who discussed with him certain legacies contained in the will after its execution,

The contestants' proof, in substance, accentuated Mr. Eno's illnesses and established more or less isolated eccentricities, prejudices, vulgarities, fits of anger, loss of memory, impecuniousness, and certain other acts and declarations, which several witnesses testified impressed them as irrational. It was claimed that this proof showed that Mr. Eno was a victim of senile dementia at the time of the execution of his will. Certain evidence of alleged delusions was also adduced. But these delusions, in my opinion, did not enter into the will or affect its provisions. For the proponents, on the other hand, just as many witnesses testified to rational acts and statements of Mr. Eno before and after the making of the will. Their testimony tended to show that he possessed great power of recuperation after illness, that there was no impairment in body or mind, except such as was the natural development of old age, and that he was free from any symptoms of senile dementia or other mental disease. This line of evidence strongly corroborated the impressive documentary proof. A striking illustration of the continuation of his mental and physical vigor up to the time of his death is the evidence of several friends as to his actions on October 20, 1915. According to the testimony of former Justice William N. Cohen and of John W. Hutchinson, both distinguished members of the bar, that of Mr. and Mrs. Stephen Van Wyck and of Stanley A. Cohen, Mr. Eno, unaccompanied, attended a wedding reception on that evening. All of these witnesses testified to the rationality of his conversation and conduct on that occasion. On his return to his home, he entered in his diary, unassisted, the names of some of the persons he had met, and made an intelligent entry of a conversation with one of these persons. He died suddenly a few hours later on October 21, 1915.

Reviewing all the evidence, only a small part of which has been referred to, it must be apparent that the verdict cannot stand. *Matter of Heaton*, 224 N. Y. 22; *Matter of Brand*, 227 id. 630, affg. 185 App. Div. 134; *Matter of Wolf*, 196 id. 722; *Matter of Eno, supra*; *Burke* v. *Burke*, 193 App. Div. 801; *Matter of Dunn*, 184 id. 386; *Lesster* v. *Lesster*, 178 id. 438; *Matter of Cutter*, 100 Misc. Rep. 130.

There is a further ground which requires the granting of this motion.  The issues on this trial had been limited by the decision of the Appellate Division to testamentary capacity only.  The court, repeatedly throughout the trial, and in its charge, emphatically stated that the jury was to determine, solely, the capacity of the testator to make a will, and instructed the jury not to consider any suggestion or arguments, or evidence tending to show fraud or undue influence.  It is my certain opinion, however, notwithstanding these positive instructions, that the jury was misled from this single issue by evidence and arguments presented by the contestants.  The contestants claimed that a decided change took place in Mr. Eno after Christmas of 1914.  Under the guise of developing testimony with relation to his mental condition, they attempted to show that some of the symptons and results of senile dementia were an " impaired will " and " suggestibility."  " Suggestibility " was defined by one of the alienists as the condition of being influenced by the suggestion of another person.  The inference was clearly intended that a material part, if not the whole of the will, was induced by suggestion or duress.  Not only was this alleged condition of weakened will power introduced, but the person who it is claimed practiced the suggestion or influence was pointed out.  The principal attack of the contestants centered upon one Southack as the person who had procured the making of the will.  Southack was a personal friend and clubmate of Mr. Eno, and so far as the record shows, had no financial interest in any of his affairs.  In order to show Southack's influence over Mr. Eno there was arrayed in the contestants' hypothetical question over thirty pages of minutes setting forth letters between Southack and Mr. Eno and transactions which tended to show Mr. Eno's susceptibility to influence by Southack.  These letters were merely friendly in tenor, or related to improvements in Mr. Eno's real estate.  None of them referred to the will or its preparation, or mentioned Columbia University — the residuary legatee.  The hypothetical question also recited that Southack was with Mr. Eno immediately before and after the execution of the will.  Moreover, in the summing up of the contestants extensive references were made to Southack's activities, to his association with Mr. Eno, to his " domination " over Mr. Eno, and in that summing up Southack was described as Mr. " Suggestibility."  The further argument was made that this picture, alone, of Mr. Eno and Southack was sufficient for the jury to reject the will.  In *Smith* v. *Keller*, 205 N. Y. 39, the Court of Appeals reversed a judgment in a will contest where evidence relevant to one issue was used to sustain an issue not in the case.  The court said: " Evidence of

MATTER OF AMOS F. ENO. **191**

Misc. 186]    Surrogate's Court, New York County, February, 1922.

acts and conversations of a deceased bearing upon her mental strength, is not incompetent simply because it bears upon some question other than that of the mental strength of the deceased. The difficulty in this case is that counsel for the plaintiff taking advantage of a rule correctly stated by the court proceeded to call many witnesses, and from them to elicit testimony bearing in a very slight degree, if at all, on the question of the mental strength of the testatrix, but in that way he obtained a large number of declarations by her subsequent to the date of the will which were well calculated to influence the jury, and which doubtless did influence the jury in determining the question submitted to it, as to whether the will was the free and voluntary act of the testatrix. * * * Questions to elicit the mental strength of a testator should be asked for that purpose and not for an incompetent and improper purpose. * * * Is it not perfectly clear that counsel for the plaintiff asked questions calling for particular conversations for the express purpose of getting before the jury statements of fact that might affect them in determining whether the will was the result of coercion and duress? Efforts to obtain from witnesses conversations, including improper and incompetent statements of fact under the guise of showing the mental strength of a testatrix, should be and are condemned, and where, as in this case, such effort has been repeated and continuous and the evidence so obtained is to a large extent relied upon to show undue influence and is not a mere incident in the receipt of evidence for a proper purpose, it requires that the judgment should be reversed."

The damage to the proponents' case by the strategy employed by the contestants here must be apparent. The direct appeal was made to the jury to set aside the will on an issue which had been excluded from the case. Moreover, on the issue of undue influence the burden of proof is on the contestants. *Matter of Kindberg*, 207 N. Y. 220. By interjecting this foreign issue into the question of testamentary capacity, the contestants entirely escaped this burden, and the proponents were compelled not only to prove capacity, by a fair preponderance of the evidence, but in the minds of the jurors, were also compelled to establish that the will was free from undue influence. Experience has shown that juries, in probate contests, are easily influenced by sympathy or prejudice, and are apt to substitute their own judgment of the manner in which even a competent testator should have distributed his property to his relatives. *Dobie* v. *Armstrong*, 160 N. Y. 584, 594. This is so regardless of the efforts of the court to instruct them that a competent testator may dispose of his property in whatever manner he pleases. It is extremely difficult for jurors to comprehend and

apply the tests laid down for the determination of probate issues, but where their verdict is materially affected by extraneous arguments, the court must, in conscience, set aside the result of their deliberations. This is not said in criticism of jurors or of the system of trials by jury in will contests. In such cases a jury trial is a matter of right. *Matter of Barlow,* 180 App. Div. 860. In great part, it is due to the technical rules of evidence and the difficulty of analyzing the complicated mass of facts in these trials, which are not found in common-law actions.

Litigants who by such means knowingly hazard the result of a trial cannot complain if their temporary success is nullified by the plain duty of the surrogate. The other pending motions in the case are denied without prejudice. Submit order accordingly, setting aside the verdict. The case is directed to be set at the head of the calendar for trial at the April term, 1922.

Ordered accordingly.